The UNION CENTRAL LIFE INSURANCE COMPANY, Petitioner-Appellee, Cross-Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellant, Cross-Appellee.

Nos. 82–1380, 82–1411.

United States Court of Appeals, Sixth Circuit.

Argued June 30, 1983.

Decided Sept. 28, 1983.

Rehearing Denied Nov. 16, 1983.

---

Glenn L. Archer, Jr. [Lead Counsel], Asst. Atty. Gen., Tax Div. Dept. of Justice, Michael L. Paup, Kenneth W. Gideon, Chief Counsel, I.R.S., Gary R. Allen, Jay W. Mil-ler (argued), Washington, D.C., for respondent-appellant, cross-appellee.

William R. Seaman, Jerry L. Cowan (argued), Frost & Jacobs, Cincinnati, Ohio, for petitioner-appellee, cross-appellant.

Before EDWARDS, Chief Judge, CONTIE, Circuit Judge, and SPIEGEL, District Judge.*

CONTIE, Circuit Judge.

The Commissioner of Internal Revenue appeals, and Union Central Life Insurance Company cross-appeals, from a Tax Court decision construing the Life Insurance Company Income Tax Act of 1959. The Tax Court, 77 Tax Court 845, held that part of an Ohio franchise tax paid by the company was deductible under 26 U.S.C. § 804(c)(1) rather than under 26 U.S.C. § 809 as contended by the Commissioner. The court also held, despite Union Central's protestations, that approximately 130 acres of unimproved land adjacent to the company's home office was an asset under 26 U.S.C. § 805(b)(4). We affirm in part, vacate in part and remand for further proceedings.

### I.

We first consider the government's appeal. Union Central is a mutual life insurance company organized under the laws of Ohio. As such, its income tax liability is governed by the Life Insurance Company Income Tax Act of 1959, 26 U.S.C. § 801 *et seq.* (Act). This case involves the company's 1972, 1973 and 1974 tax returns.

During these years, Ohio law required Union Central to pay an annual franchise tax. OHIO REV.CODE ANN. §§ 5725.18, 5725.19 (Page) (1980).[1] The tax consisted of three-tenths of one percent of the smaller of: (1) an insurance company's surplus or (2) eight and one-third times the gross amount of premiums received. Union Central computed its franchise tax liability under the former option for each of the years in question.

---

* The Honorable S. Arthur Spiegel, United States District Judge for the Southern District of Ohio, sitting by designation.

1. These provisions have since been amended and consolidated. *See* OHIO REV.CODE ANN. § 5725.18 (Page) (Supp.1983).

In order to determine a life insurance company's ultimate income tax liability under the Act, several complicated calculations are necessary.[2] This litigation concerns the calculation of Union Central's investment yield, which is defined as gross investment income less several types of deductions. 26 U.S.C. § 804(c). One of these deductions, investment expenses, includes investment expenses for the taxable year and general expenses which "are in part assigned to or included in" investment expenses. 26 U.S.C. § 804(c)(1). From 1972 to 1974, Union Central deducted, pursuant to § 804(c)(1), almost thirty percent of its franchise tax payments as a general expense assigned to or included in investment expenses. The thirty percent figure was the ratio of the company's gross investment income to total gross income. The Commissioner disallowed the deduction, reasoning that the franchise tax payments were deductible only under 26 U.S.C. § 809. The intricacies of the Act render a § 804(c)(1) deduction much more valuable to the taxpayer than a § 809 deduction. The Tax Court disagreed with the Commissioner and ruled for the company.

The Commissioner presents alternative arguments, the first of which is that since the Ohio franchise tax is assessed against gross premium receipts, all tax payments must be allocated to Union Central's underwriting department rather than to its investment department. The Commissioner cites *Liberty Life Insurance Co. v. United States,* 594 F.2d 21 (4th Cir.1979), *cert. denied,* 444 U.S. 838, 100 S.Ct. 74, 62 L.Ed.2d 49 (1979), to support this claim. *Liberty Life* involved a South Carolina license fee imposed upon domestic life insurance companies. Such companies were required to pay a tax of two percent of their total premium incomes up to a maximum liability of five percent of net income from all sources. The taxpayer in *Liberty Life* remitted the maximum fee.

The Fourth Circuit held that although the company had paid five percent of its net income from all sources (including investments), no portion of the payment could be allocated to investment expenses. The South Carolina statute clearly intended to impose the tax on premium receipts; the limitation of five percent of net income was merely a method of calculating how much of that liability was actually due and payable. *Id.* at 23. Thus, all license fee payments were allocable to underwriting expenses.

The Commissioner asserts that the Ohio franchise tax statute is similarly constructed. He contends that Ohio actually taxed three-tenths of one percent of eight and one-third times gross premium receipts, with a limitation measured in terms of three-tenths of one percent of surplus. Since Ohio taxed premium receipts, *Liberty Life* requires that all of Union Central's franchise tax payments be allocated to its underwriting department rather than to its investment department.

We disagree because the plain language of the Ohio statute indicates that the tax is assessed not against gross premium receipts, but is instead a more general tax on the privilege of doing business within the state. The nature of the Ohio tax is apparent from the first sentence of ORC § 5725.-18 which reads: "An annual franchise tax on the privilege of being an insurance company is hereby levied...." The references to surplus and to gross premium receipts merely constitute alternative methods for measuring the amount of this liability. Consequently, the structure of Ohio's statute does not compel the conclusion that all of Union Central's franchise tax payments must be allocated to underwriting expenses.

The *Liberty Life* case may actually support Union Central's position. The taxpayer in Liberty Life urged the court to permit it to assign portions of its license fee payments to investment expenses. The court stated:

---

**2.** An overview of how the Act operates is available elsewhere and will not be repeated here. *See, e.g.,* S.Rep. No. 291, 86th Cong., 1st Sess. (1959), *reprinted in,* 1959 U.S.Code Cong. & Ad.News 1575; *Liberty National Life Insurance Co. v. United States,* 600 F.2d 1106, 1109 (5th Cir.1979), *cert. denied,* 444 U.S. 1072, 100 S.Ct. 1017, 62 L.Ed.2d 754 (1980).

[P]laintiff argues that since the fee is by far the largest sum it pays to the state each year, the charge is in reality a tax on the privilege of doing business—all business, including investment business—in the state. Plaintiff ... suggests that a fee paid to a state for the privilege of doing business there might be apportioned to the investment department of the company.

*This may be a correct statement of the law.... If the statute by its terms imposed the fee for the privilege of transacting business within the state, the plaintiff's argument would have some force.* [Emphasis supplied.]

*Id.* at 24. The court's legal conclusion obviously is *dicta* because the tax involved in *Liberty Life* was an assessment against gross premium receipts rather than upon the privilege of doing business. The court's comment nevertheless reflects that it might have approved the taxpayer's logic had it faced a situation like the one presented here. Thus, the holding in *Liberty Life* is distinguishable and certain other remarks in the case indicate that taxes paid for the privilege of doing business may under some circumstances be partially allocable to a life insurance company's investment department.

The Commissioner's second argument is that even if the Ohio franchise tax is an assessment upon the privilege of doing business, no portion of Union Central's tax payments are deductible under § 804(c)(1) because such payments are not "directly related" to the production of investment income. The Tax Court held that because the tax payments were general expenses within the meaning of § 804(c)(1), an indirect relationship between the payments and the production of investment income would suffice. The court proceeded to hold that Union Central had established this indirect nexus.

The Treasury Regulations highlight the difference between investment expenses and general expenses. Investment expenses are payments made for the exclusive benefit of the investment department, 26 C.F.R. § 1.804–4(b)(i), whereas general expenses are payments made for the benefit of more than one department, but which can be allocated among such departments. 26 C.F.R. § 1.804–4(b)(ii). It is undisputed that investment expenses must be directly and entirely related to the production of investment income. *Commissioner of Internal Revenue v. Volunteer State Life Insurance Company,* 110 F.2d 879, 882 (6th Cir. 1940), *cert. denied,* 310 U.S. 636, 60 S.Ct. 1080, 84 L.Ed.2d 1405 (1940); *New World Life Insurance Company v. United States,* 26 F.Supp. 444, 458, 88 Ct.Cl. 405 (1939), *affd.* 311 U.S. 620, 61 S.Ct. 314, 85 L.Ed. 388 (1940).[3] The Tax Court held that because § 804(c)(1) creates two categories of deductible expenses, *i.e.,* investment expenses and general expenses, the criteria which apply to the former do not apply to the latter. Hence, the court stated that general expenses need not meet the directness requirement.

■ This conclusion was error. The Court of Claims has held that general expenses are deductible as investment expenses if the former can:

With some degree of reasonableness, be said to have some *direct* relationship to the investment department and also to be reasonably susceptible of division and assignment in part to the different departments of the business. [Emphasis supplied.]

*New World Life,* 26 F.Supp. at 459. Moreover, this court in *Volunteer State Life* held that portions of general expenses which are assigned to or included in investment expenses must be directly and entirely related to investment department operations. 110 F.2d at 882. We therefore hold that for general expenses to be deductible under § 804(c)(1), they must be directly related to the production of investment income.

Union Central contends that this outcome renders superfluous the provision allowing

---

**3.** Although several of the cases cited in this opinion construed provisions of predecessor statutes to the Life Insurance Company Income Tax Act of 1959, the parties agree that the cases remain applicable.

the deduction of general expenses. The company argues that if those portions of general expenses which are assigned to or included in investment expenses must be directly related to producing investment income, then the two concepts of investment expenses and general expenses are unnecessary. We reject this claim. Congress could have provided for the deduction of only those expenses benefiting one department, *i.e.,* investment expenses as defined in *Volunteer State Life, New World Life* and the Treasury Regulations. Congress in fact went further by allowing the deduction of portions of expenses which benefit more than one department. The distinction between investment expenses and general expenses therefore retains meaning.

■ Since the Tax Court only required Union Central's franchise tax payments to be indirectly related to producing investment income, the court's decision cannot stand. Whether the company's payments were directly related to the production of investment income is a question which the Tax Court should be permitted to address in the first instance with the benefit of full briefing by the parties. Accordingly, the Tax Court's judgment regarding the deductibility of Union Central's franchise tax payments under § 804(c)(1) must be vacated and the case remanded for further proceedings.

## II.

We next consider Union Central's cross-appeal. Union Central purchased a 189.2 acre tract of land in Hamilton County, Ohio in 1958. The company eventually constructed its corporate offices on a 60 acre corner of this property. The remaining 130 acres have remained in a rough and natural state. The company asserts that it has held the 130 acres for future office expansion, for employee recreational purposes and as a buffer against unwanted business and residential development. Although the land

could be used to generate income, the company has never used it for that purpose.

Union Central did not claim the 130 acres of unimproved land as an asset on its 1972–74 tax returns on the theory that the real property was being "used by it in carrying on an insurance trade or business." 26 U.S.C. § 805(b)(4). Although the Commissioner agreed that the 60 acres upon which the company's offices rested were being used to carry on an insurance trade or business, and were therefore excludable from assets, he rejected Union Central's characterization of the unimproved property. The Tax Court upheld the Commissioner.

Section 805(b)(4) requires a life insurance company to claim as assets "all assets of the company ... other than real and personal property (excluding money) used by it in carrying on an insurance trade or business." The company contends that since it purchased the 130 acres contemporaneously with the 60 acres upon which its offices, parking lots and access roads are situated, and since the unimproved property is held for future office expansion, for recreational use by employees and as a buffer against undesired development, the company is using the land to carry on its insurance business. The Tax Court held that the land was not being held for any of the reasons asserted[4] and therefore was not being used to carry on an insurance business.

■ The Tax Court's holding is a factual finding which will not be disturbed unless clearly erroneous. *Cf. Gartrell v. United States,* 619 F.2d 1150, 1152–53 (6th Cir.1980) (whether land is held primarily for sale to customers in the ordinary course of trade or business is a factual inquiry) (cases collected). Union Central argues both that it used the land for the reasons asserted and that even if it did not, the property should still be considered as having been used to carry on an insurance business. On the latter point, the company claims that if property has been "devoted" to carrying on an insurance business, the § 805(b)(4) requirement is satisfied even if the land is not being

---

4. For instance, although the company argued that the unimproved acreage was available to employees for recreational purposes, no recreation facilities had been constructed on the property. Nor did the company show that employees in fact used the land for recreation.

used for that purpose at any given time. *Cf. Kittredge v. Commissioner of Internal Revenue,* 88 F.2d 632 (2d Cir.1937); *Yellow Cab Co. v. Driscoll,* 24 F.Supp. 993 (W.D.Pa. 1938). It argues that it has indeed devoted the unimproved land to carrying on its insurance business. It further argues that although the cited cases construed the phrase "used in trade or business" as found in other areas of the Code, the cases are persuasive because the same term used in different parts of a statute are presumed to have the same meaning. *See, e.g., Hotel Equities Corp. v. Commissioner of Internal Revenue,* 546 F.2d 725, 728 (7th Cir.1976).

The Commissioner responds that under the 1959 Act, property is used to carry on an insurance trade or business only if it contributes to the actual operation of the business. He points out that the phrase "used in trade or business" appears in a miscellaneous provision of the Act, 26 U.S.C. § 817(a), and that the legislative history of that section limits the scope of the phrase as follows:

> The term "property used in carrying on an insurance business" means ... only those assets used in the operation of the insurance trade or business. These assets include such items as the home office building, branch offices, office equipment, and furniture and fixtures.

*See* 1959 U.S.CODE CONG. & AD.NEWS, *supra* at 1646. The Commissioner implies that if this court looks to provisions other than § 805(b)(4) in order to divine the meaning of the phrase "used ... in carrying on an insurance trade or business," the court should limit its inquiry to other provisions of the 1959 Act.

We agree with the Commissioner's approach and hold that for real property to be considered as being used to carry on an insurance trade or business, the property must be used in the business' normal operations. While the examples of personal property cited in the legislative history satisfy this test, the unimproved land under

consideration does not. The Tax Court's finding that the land was not being used to carry on an insurance trade or business was not clearly erroneous.

Although the Tax Court did not invoke alternative grounds for its decision, it could also have held that the unimproved acreage was an asset under § 805(b)(4) as a matter of law. The Treasury Regulations list the only items which may be excluded from the term "assets." The relevant exclusion reads:

> The home office and branch office buildings (including land) owned and occupied by the life insurance company.

26 C.F.R. § 1.805–5(a)(4)(i)(a). Land is mentioned parenthetically in this regulation within the language excluding office buildings from the purview of the term "assets." We therefore construe the parenthetical remark as referring only to real property underlying a life insurance company's owned and occupied office buildings.[5] Since Union Central's unimproved acreage does not underlie its corporate offices, the property is an asset under § 805(b)(4).

Revenue Ruling 67–243, *reprinted in,* Mertens Law of Federal Income Taxation 552 (Rulings) (1969), also supports the conclusion that the unimproved land is an asset. The ruling stated that:

> In determining whether real and personal property ... is used in carrying on a life insurance business, availability for investment purposes is a significant factor. Therefore, assets ... not available for investment purposes because of some reason connected with the operation of an insurance trade or business need not be included [in assets].

*Id.* at 553. The obvious implication is that real property which is available for investment must be included. Furthermore, the Fifth Circuit adopted the availability test for determining § 805(b)(4) questions in *Liberty National Life Insurance Company v. United States,* 463 F.2d 1027, 1030 (5th Cir.1972). Although Union Central has

---

**5.** The Commissioner also allowed the company to exclude from assets a reasonable amount of

land used for parking lots and access roads.

never used the 130 acres for investment purposes, the property clearly was, and remains, available for investment. We therefore hold that the company's unimproved land is an asset under § 805(b)(4) and that the Tax Court's judgment on this issue should be affirmed.

### III.

The judgment of the Tax Court on the issues raised by the cross-appeal is AFFIRMED. The judgment of the Tax Court on the issues raised by the appeal is VACATED and the case is REMANDED for further proceedings.