The **NORTHWESTERN MUTUAL LIFE INSURANCE COMPANY**

v.

The **UNITED STATES.**

Nos. 441–80T, 125–82T.

United States Claims Court.

March 7, 1985.

George R. Abramowitz, Washington, D.C., for plaintiff. Francis M. Gregory, Jr., Michael R. Miles, Washington, D.C., Michael J. Jones and John M. Bremer, Milwaukee, Wis., of counsel.

Robert W. Metzler, U.S. Dept. of Justice, Tax Division, Michael J. Dennis, J. Walker Johnson and Theodore D. Peyser, Jr., Washington, D.C., with whom was Asst. Atty. Gen. Glenn L. Archer, Jr., Washington, D.C., for defendant.

## OPINION

MARGOLIS, Judge.

This case is before this Court on cross-motions for partial summary judgment,[1] submitted with oral argument. The plaintiff, Northwestern Mutual Life Insurance Company, a life insurance company taxable under sections 801–820 of the Internal Revenue Code,[2] seeks to recover approximately two million dollars of alleged overpayments of federal income taxes, plus assessed and statutory interest, for the taxable years 1971–76. In each of these years, the plaintiff paid state income or excise taxes to Florida, Illinois, Minnesota and New York. Subsequently, in computing its federal tax liability, the plaintiff deducted these state taxes as investment expenses under I.R.C. § 804(c). The Commissioner of Internal Revenue disallowed these deductions. The issue presented is whether the state taxes paid are deductible under I.R.C. § 804(c)(1) either as investment expenses or as general expenses in part assigned to or included in the investment expenses, or whether they must be deducted under I.R.C. § 809(d) as other deductions.

## FACTS

The plaintiff, a Wisconsin corporation, is a mutual life insurance company which conducts business in all fifty states and the District of Columbia. Consequently, the plaintiff is subject to various state taxes. During the years in issue, the plaintiff deducted as investment expenses the following amounts of Florida, Illinois, Minnesota and New York state taxes it paid:

|    | 1971 | 1972 | 1973 | 1974 | 1975 | 1976 |
|----|------|------|------|------|------|------|
| IL | $371,545.93 | $414,380 | $486,913.11 | $494,258.85 | $439,007 | $619,439 |
| FL | — | — | 285,538.46 | 174,823.70 | 115,384 | 271,801 |
| NY | — | — | — | 292,000 | 411,129.59 | 462,630 |
| MN | — | — | — | — | — | 96,422 |

1. All other issues, however, have been settled or resolved.

2. All statutory references are to the Internal Revenue Code of 1954, as amended, 26 U.S.C. (I.R.C.), unless otherwise indicated.

The Commissioner of Internal Revenue disallowed the plaintiff's treatment of the state taxes and required the plaintiff to deduct them as "other deductions" under I.R.C. § 809(d)(12).[3]

A summary of the state tax provisions under which the above liabilities arose follows.

*Illinois.* Illinois imposes a tax "measured by net income" for "the privilege of earning or receiving income" in the state. Ill.Ann.Stat. ch. 120, § 2–201(a) (Smith-Hurd 1970). The tax is in addition to any other Illinois occupation or privilege tax. *Id.* In the case of corporations, the tax is 4% of the taxpayer's net income for the taxable year. The taxpayer's net income for the taxable year is that portion of the taxpayer's federal taxable income apportioned to the state using the appropriate apportionment formula. *Id.* at § 2–202(a).

For life insurance companies, the federal income base which is apportioned to Illinois is the company's life insurance company taxable income (LICTI) under I.R.C. § 802. *Id.* at § 2–203(d)(2)(A). The LICTI is apportioned to Illinois using the following formula: direct premiums written in Illinois upon property or risk there divided by direct premiums written upon property or risk everywhere. *Id.* at § 3–304(b)(1). The formula yields a fraction which is multiplied against LICTI to determine the Illinois net income for the taxable year subject to the 4% tax.

Illinois also imposes a privilege tax on foreign insurance companies equal to two percent of net taxable premium income. Illinois allows insurance companies to credit state income tax payments against the privilege tax. Ill.Ann.Stat. ch. 73, § 409(1) & (2)(b) (Smith-Hurd Cum. Pocket Part 1982–83).

*Florida.* The Florida taxing scheme is substantially the same as that of Illinois. The tax—5% of the taxpayer's net income for the taxable year—is imposed for "the privilege of conducting business, earning or receiving income in [Florida], or being a resident or citizen of [Florida]." Fla.Stat. Ann. § 220.11 (West Cum. Pocket Part 1983).

Florida apportions LICTI to the state through the following formula: direct premiums written upon properties and risks in Florida divided by direct premiums written upon properties and risks everywhere. *Id.* at § 214.72(1)(a).

Florida also imposes a premium tax based on gross receipts from life policies covering Florida residents and on gross receipts on annuity contracts paid by holders within Florida. Florida allows insurance companies to credit income tax payments against the premium tax. *Id.* at § 624.509(4) (1972).

*New York.* New York imposes a tax for "the privilege of exercising [a] corporate franchise, or of doing business, or of employing capital, or of owning or leasing property in [the] state . . . or of maintaining an office in [the] state. . . ." N.Y.Tax Law § 1501(a) (McKinney 1975). For the years in issue, the tax imposed on the plaintiff was four-tenths of a mill for each dollar of the portion of the taxpayer's subsidiary capital allocated to the state plus 4.5 percent of the taxpayer's net income allocated to New York. *See id.* at § 1502(a)(1) & (b). The plaintiff's net income allocated to New York was its LICTI, allocated to the state using a weighted-average, two-factor formula: (1) New York premiums for the taxable year divided by total premiums for the taxable year, and (2) wages, salaries, compensation and commissions for the taxable year paid to employees, agents and representatives of the taxpayer within New York divided by the wages, salaries, compensation and commission for the taxable year paid to all of the taxpayer's employees, agents and representatives. *Id.* at § 1504(a).

*Minnesota.* Minnesota imposes an excise tax on corporations, measured by the "taxable net income for the taxable year," for "the grant to [the corporation] of the privilege of transacting or for the actual

---

**3.** I.R.C. § 809(d)(12) was renumbered as I.R.C. § 809(d)(11) by the Tax Reform Act of 1976, Pub.L. No. 94–455, § 1901(a)(98)(B)(i), 90 Stat. 1520, 1781.

transaction" of business within the state. Minn.Stat.Ann. § 290.02 (West 1962 and West Cum. Pocket Part 1983).

For insurance companies, the calculation of the taxable net income for the taxable year begins with a tax base of the net income "that [the taxpayer] would be required to return" to the United States if the Revenue Act of 1936 were in effect. *Id.* at § 290.35. This tax base is apportioned to the state using the following formula: gross premiums collected from old and new business within the state divided by total gross premiums collected on entire old and new business. *Id.*

Minnesota also imposes a premium tax on foreign insurance companies. Minnesota allows life insurance companies to credit any premium taxes paid during each year against the net income tax. *Id.* at § 290.-06(3f)(6).

## DISCUSSION

From 1921 until the enactment of the Life Insurance Company Income Tax Act of 1959, Pub.L. No. 86–69, 73 Stat. 112 (26 U.S.C. §§ 801–820) (the 1959 Act), life insurance companies were taxed only on their net investment income; no tax was imposed on their underwriting income. *Massachusetts Mutual Life Insurance Company v. United States*, 5 Cl.Ct. 581 (1984); *American National Insurance Co. v. United States*, 231 Ct.Cl. 604, 607, 690 F.2d 878, 881 (1982). The 1959 Act subjected all the income of a life insurance company to tax by imposing a tax on "life insurance company taxable income" (LICTI). I.R.C. § 802(a). Simply stated,[4] LICTI is determined on the basis of the so-called three-phase computation. *Id.* at § 802(b).

Phase I is "taxable investment income...or if smaller, the gain from operations...." *Id.* at § 802(b)(1). If gain from operations is smaller than taxable investment income, the company is taxed only on the phase I amount. If gain from operations exceeds taxable investment income, phase II adds 50% of that excess to the amount taxable in phase I. *Id.* at § 802(b)(2). Phase III is not relevant to this case.

This dispute concerns whether the state taxes are deductible in determining taxable investment income or whether they must be deducted in determining gain from operations. A deduction under taxable investment income is significantly more valuable to the plaintiff than is a deduction under gain from operations.[5]

Taxable investment income is defined in I.R.C. § 804. A major component of taxable investment income is investment yield, which is composed of gross investment income less the deductions enumerated in I.R.C. § 804(c). One of these deductions is for "investment expenses." *Id.* at § 804(c)(1).

The investment expense deduction of I.R.C. § 804(c)(1) includes two distinct types of expenses: investment expenses, which are fully deductible, and general expenses, which are only partially included in the investment expenses based on the extent to which they benefit the investment department. A limitation on total I.R.C. § 804(c)(1) deductions applies whenever any general expenses are included in the investment expenses. I.R.C. § 804(c)(1).

The statute does not define the terms "investment expenses" or "general ex-

---

**4.** The Court recognizes the folly of "simply stating" such a complex statute. For a detailed explanation of the Act, see *Massachusetts Mutual*, 5 Cl.Ct. at 584–86; *American National*, 231 Ct.Cl. at 608, 690 F.2d at 881. *Liberty National Life Insurance Co. v. United States*, 600 F.2d 1106, 1109 (5th Cir.1979) *cert. denied*, 444 U.S. 1072, 100 S.Ct. 1017, 62 L.Ed.2d 754 (1980).

**5.** As will be shown, gain from operations ordinarily cannot be less than taxable investment income minus $250,000. In each year at issue,

the plaintiff's gain from operations was at this minimum amount. Thus an additional deduction under gain from operations would have been of no value to the plaintiff. An additional deduction under taxable investment income, however, would have enabled the plaintiff to reduce its gain from operations by a like amount provided an additional deduction under gain from operations was available. Typically, the additional deduction under gain from operations would be dividends paid to policyholders.

penses." The Treasury Regulations provide that investment expenses are "those expenses of the taxable year which are fairly chargeable against gross investment income." Treas.Reg. § 1.804–4(b)(1)(i). Furthermore, all I.R.C. § 804(c) deductions must "relate" to investment income and may not be "disallowed by any other provision of subtitle A of the Code." Treas. Reg. § 1.804–4(a). The regulations give as examples of investment expenses "salaries and expenses paid exclusively for work in looking after investments, and amounts expended for printing, stationery, postage, and stenographic work incident to the collection of interest." Treas.Reg. § 1.804–4(b)(1)(i).

The Treasury Regulations also illuminate the term "general expenses."

> As used in section 804(c)(1), the term "general expenses" *means any expense paid or incurred for the benefit of more than one department of the company rather than for the benefit of a particular department thereof.* For example, if real estate taxes, depreciation, or other expenses attributable to office space owned by the company and utilized by it in connection with its investment function are assigned to investment expenses, such items shall be deductible as general expenses assigned to or included in investment expenses.... Similarly, if an expense, such as a salary, is attributable to more than one department, including the investment department, such expense may be properly allocated among these departments. If such expenses are allocated, the amount properly allocable to the investment department shall be deductible as general expenses assigned to or included in investment expenses .... Investment expenses do not include Federal income and excess profits taxes, if any.

Treas.Reg. § 1.804–4(b)(1)(ii) (emphasis added).

In a seminal case, *New World Life Insurance Co. v. United States*, 88 Ct.Cl. 405, 26 F.Supp. 444 (1939), *aff'd per curiam*, 311 U.S. 620, 61 S.Ct. 314, 85 L.Ed. 393 (1940), the United States Court of Claims defined investment expenses as expenses "directly relating to and entirely incurred in the maintenance and operation of the investment department." *Id.* at 432–33, 26 F.Supp. at 458.[6] General expenses which may be included in part in the investment expenses are those expenses that "might, with some degree of reasonableness, be said to have some direct relationship to the investment department and also to be reasonably susceptible of division and assignment in part to the different departments of the business." *Id.* at 435, 26 F.Supp. at 459. *Accord Union Central Life Insurance Co. v. United States*, 720 F.2d 420, 423 (6th Cir.1983).

The courts and commentators have long recognized that taxes paid by a life insurance company may qualify as either investment expenses or general expenses in part assigned to the investment department, provided the required nexus between the tax and the investment department is established. In *New World*, the Court of Claims stated that "[a]mong other expenses of a general nature which could with equal facility be apportioned and assigned in part to the investment department, the following must be mentioned: ...(10) license fees paid to various states for the privilege of doing business therein." 88 Ct.Cl. at 435 n. 11, 26 F.Supp. at 459 n. 11. *See Union Central*, 720 F.2d at 424. *See also Liberty Life Insurance Co. v. United States*, 594 F.2d 21, 24 (4th Cir.) *cert. denied*, 444 U.S. 838, 100 S.Ct. 74, 62 L.Ed.2d 49 (1979); 8 Mertens, *The Law of Federal Income Taxation* § 44.38 (Rev. 1978).

■ Although the wording of the state tax statutes at issue varies, each state imposed the tax for the privilege of conduct-

---

**6.** Although *New World* was decided long before the 1959 Act was enacted, the parties agree that the case remains applicable. While the 1959 Act substantially changed the overall taxing scheme for life insurance companies, the treatment of investment expenses has largely remained unchanged since 1921. *See Massachusetts Mutual*, 5 Cl.Ct. at 587–89.

ing business or earning income within the state. Ill.Ann.Stat. ch. 120, § 2–201(a) (Smith-Hurd 1970); Fla.Stat.Ann. § 220.11 (West Cum. Pocket Part 1983); N.Y.Tax Law § 1501(a) (McKinney 1975); Minn.Stat. Ann. § 290.02 (West 1962 and West Cum. Pocket Part 1983). By enabling the plaintiff to conduct business within the states, the taxes were "paid or incurred for the benefit of more than one department of the company rather than for the benefit of a particular department thereof." Treas. Reg. § 1.804–4(b)(ii). For this reason, the taxes can not qualify as investment expenses, deductible in full under I.R.C. § 804(c)(1). The taxes, however, could qualify as general expenses assignable in part to the investment department, provided the required direct nexus to that department is established.

■ To determine whether the taxes bear a direct relationship to the plaintiff's investment department, the necessary inquiry must focus on the nature of the income being taxed. A tax on total premium income is not deductible under I.R.C. § 804(c)(1). *Liberty Life*, 594 F.2d at 23–24. A tax on gross investment income, however, is deductible under I.R.C. § 804(c)(1). Rev.Rul. 79–350, 1979–2 C.B. 257.

■ In the instant case, the Minnesota excise tax was imposed on the plaintiff's net income apportioned to the state. The plaintiff's net income under the Minnesota statute is the net income which the plaintiff would have returned to the United States if the Revenue Act of 1936 were in effect. Under the 1936 Act, ch. 690, 49 Stat. 1648, life insurance companies were taxed only on their net investment income; underwriting activities were not subject to tax. *Id.* at §§ 201–03. Since the 1936 Act taxed only net investment income, the Minnesota tax was attributable solely to the plaintiff's net investment income.

The Illinois, Florida and New York tax statutes use as a federal tax base the plaintiff's LICTI. Under I.R.C. § 802(b), LICTI consists of gain from operations when that amount is smaller than taxable investment income. In each year in issue, the plaintiff's gain from operations was smaller than its taxable investment income.

The defendant contends that since the plaintiff's federal tax base was gain from operations, there was no direct relationship between the tax and the plaintiff's investment income. The defendant's contention, however, relies entirely on the mere label "gain from operations" and ignores the substance of the meaning of that term under I.R.C. § 809.

■ Gain from operations, as set forth in I.R.C. §§ 809–812, represents in substance total net income from all sources. *United States v. Atlas Life Insurance Co.*, 381 U.S. 233, 235 n. 2, 85 S.Ct. 1379, 1381 n. 2, 14 L.Ed.2d 358 (1965). The company's gross receipts from all sources are taken into account, including the company's share of investment income and its gross receipts from underwriting activities. I.R.C. § 809(b) & (c); *American National*, 231 Ct.Cl. at 608, 690 F.2d at 881. The company's share of investment income is largely the same as the taxable investment income under I.R.C. § 804(b). The deductions allowed from gross receipts are enumerated in I.R.C. § 809(d).

One of the deductions allowed is for dividends paid to policyholders. I.R.C. § 809(d)(3). The amount of this deduction (and two other deductions not relevant here) is limited by I.R.C. § 809(f). During the years in issue, these deductions could not exceed $250,000 plus the amount by which the gain from operations without regard to such deductions exceeded taxable investment income. In other words, the dividends paid to policyholders deduction could not reduce gain from operations below the amount of taxable investment income minus $250,000.

This limitation has major significance to this case. In enacting the 1959 Act, Congress was concerned that mutual life insurance companies could pay out dividends to policyholders in an amount equal to gain from operations, deduct those dividends, and thereby escape being taxed even on

investment income. *American National,* 231 Ct.Cl. at 611, 690 F.2d at 882. Congress intended to ensure that the companies would be taxed at least on approximately as much income as was taxed prior to the 1959 Act, *i.e.,* investment income. The purpose of the I.R.C. § 809(f) limitation is to establish a minimum tax base for insurance companies equal to their taxable investment income less $250,000.[7]

The intent of Congress is establishing investment income as a minimum tax base is apparent in this case. In each year, the plaintiff was taxed on an amount equal to its taxable investment income minus $250,000. The difference between taxable investment income and gain from operations was thought by Congress to be roughly equivalent to underwriting gain. *American National,* 231 Ct.Cl. at 608, 690 F.2d at 881. In each year, the plaintiff was able, in effect, to eliminate its underwriting gain through its dividends paid to policyholders deduction. Thus in each year, the plaintiff was taxed solely on investment income.

■ Illinois, Florida and New York use LICTI as the tax base for calculating the income attributable to the state. Since the plaintiff's LICTI consisted solely of investment income, the taxes the plaintiff paid in those states was also attributable solely to investment income.

■ The defendant, relying on Rev.Rul. 79–351, 1979–2 C.B. 259, contends that a state tax on *net* investment income does not meet the requirements of the Treasury Regulation, which states that for an expense to be deductible under I.R.C. § 804(c)(1) it must be fairly chargeable against *gross* investment income. Treas. Reg. § 1.804–4(b)(1)(i). This Court disagrees, and chooses not to follow Rev.Rul. 79–351. *See State Bank of Albany v. United States,* 209 Ct.Cl. 13, 19, 530 F.2d 1379, 1382 (1976).

■ The Treasury Regulations provide that for an expense to be an investment expense, it must be fairly chargeable against gross investment income. Treas. Reg. § 1.804–4(b)(1)(i). An expense is fairly chargeable against gross investment income if it meets the standards set forth in *New World:* directly and entirely related to investment income in the case of an investment expense, or reasonably direct and reasonably susceptible of allocation in the case of a general expense. 88 Ct.Cl. at 432–35, 26 F.Supp. at 458–59. Merely because the amount of an expense is determined on the basis of net income does not mean it is not fairly chargeable against gross income. The state taxes in the instant case were determined solely on the basis of the plaintiff's net investment income. They therefore had a reasonably direct relationship to investment income, and, provided they were reasonably susceptible of division and assignment in part to the different departments of the business, are deductible as general expenses in part assigned to or included in the investment expenses. *Id.* at 435, 26 F.Supp. at 459.

■ The defendant further contends that because the federal net income of the plaintiff was apportioned to the states through formulas based exclusively or in large part on gross premiums, the tax had a direct relationship to premium income and not investment income. Again this Court disagrees. The "plain language" of the state statutes indicates that the tax was assessed not against gross premiums, but on the federal LICTI apportioned to the state. *Union Central,* 720 F.2d at 422. The taxes were net income taxes; the inquiry must focus on the nature of the net income. An apportionment formula based on gross premiums or wages is merely one of many reasonable methods of making a constitutionally valid allocation. *See General Motors Corp. v. District of Columbia,* 380 U.S. 553, 560–61, 85 S.Ct. 1156, 1160–61, 14 L.Ed.2d 68 (1965).

---

7. The $250,000 was intended as a measure of relief for smaller mutual insurance companies. *See* S.Rep. No. 291, 86th Cong., 1st Sess. 22,

*reprinted in* 1959–2 C.B. 770, 785–86, U.S. Code Cong. & Admin. News 1959, 1575.

■ Finally, the defendant contends that because the plaintiff was entitled to credit its Florida and Illinois income tax payments against its premium tax liabilities in those states, the income tax was merely a substitute for a premium tax. *See* Rev.Rul. 76–209, 1976–1 C.B. 182. The defendant, however, does not contend that the Minnesota premium tax, which the plaintiff was entitled to credit against its income tax, was merely a substitute for an income tax. In any event, the taxes at issue were independently determined and represented independent obligations to the state, whether they were less than or exceeded the premium taxes. The state legislatures have chosen to tax the plaintiff's income and to allow a credit for payment of a premium tax. This choice is a "policy decision with which [this Court] need not be concerned...." *Liberty Life*, 594 F.2d at 24.

Having determined that the state taxes were general expenses which had a reasonably direct relationship to the plaintiff's investment department, the question remains whether they were "reasonably susceptible of division and assignment in part to the different departments of the business." *New World*, 88 Ct.Cl. at 435, 26 F.Supp. at 459. This in turn requires a reasonable method of allocating a portion of the taxes to the investment department.

■ While the state taxes were measured solely on the basis of the plaintiff's investment income, they were paid for the privilege of conducting all of the plaintiff's business within the state. They are therefore "reasonably susceptible" to division and assignment based on a comparison of the total gross income generated by the plaintiff from its investment operations to the total gross income generated by the plaintiff from all sources. A reasonable method of allocation is obtained by multiplying the state taxes by a fraction, the numerator of which is the plaintiff's total gross income from investment operations and the denominator of which is the plaintiff's total gross income. This method of allocation was approved by the Tax Court

in *Union Central Life Insurance Co. v. Commissioner*, 77 T.C. 845, 864–65 (1981), *rev'd on other grounds and remanded*, 720 F.2d 420 (6th Cir.1983). It is reasonable under the circumstances.

## CONCLUSION

The state taxes paid by the plaintiff were paid for the privilege of conducting business or earning income within the states. They were therefore paid or incurred for the benefit of more than one department of the plaintiff, and were general expenses as that term is defined by the Treasury Regulations. In each state, the taxes were determined on the basis of the plaintiff's net investment income; they therefore had a reasonably direct relationship to investment income. Moreover, the taxes are reasonably susceptible of assignment to the investment department on the basis of the plaintiff's total gross investment income compared to its total gross income. The state taxes, therefore, are general expenses which can be in part assigned to and included in the investment expenses under I.R.C. § 804(c)(1).

Accordingly, the plaintiff's motion for partial summary judgment is granted, and the defendant's motion for partial summary judgment is denied.

The parties have forty-five days to determine the portion of the state taxes which can be properly deducted under I.R.C. § 804(c)(1) and the refund due the plaintiff pursuant to this opinion. Since I.R.C. § 804(c)(1) imposes a limitation on total I.R.C. § 804(c)(1) deductions whenever any general expenses are included in the investment expenses, the parties will consider what effect, if any, this limitation has on the instant case. If the parties are unable to agree on the proper amount of the deductions and the refund due the plaintiff within the allotted time, a status call will be held on April 22, 1985, in the National Courts Building, at a time and in a courtroom to be announced.