THE UNION CENTRAL LIFE INSURANCE COMPANY, PETITIONER *V.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 2094–78.     Filed March 11, 1985.

*William R. Seaman, Jerry L. Cowan,* and *Thomas C. Rink,* for the petitioner.
*Conley G. Wilkerson,* for the respondent.

---

SUPPLEMENTAL OPINION

WILES, *Judge*: The Court of Appeals for the Sixth Circuit remanded this case for us to determine whether the payments of Ohio franchise taxes by petitioner during 1972, 1973, and 1974 were directly related to the production of investment income.

The issue in this case is legal. However, to the extent necessary we find the facts to be as set forth in the findings of fact in our opinion filed in *Union Central Life Insurance Co. v. Commissioner*, 77 T.C. 845 (1981).

We are concerned herein with the calculation of petitioner's investment yield pursuant to section 804(c).[1] To the extent relevant, investment yield is defined as gross investment income less investment expenses and general expenses which are in part assigned to or included in investment expenses. Sec. 804(c)(1); sec. 1.804–4(b)(1)(ii), Income Tax Regs. The definition of investment expenses and general expenses is not provided by statute but may be found in the regulations under section 804. Generally, investment expenses are payments made for the exclusive benefit of the investment department, whereas general expenses are payments made for the benefit of more than one department, but which can be allocated among such departments. Sec. 1.804–4(b)(1)(i) and (ii), Income Tax Regs.; *Union Central Life Insurance Co. v. Commissioner*, 720 F. 2d 420, 423 (6th Cir. 1983).

In analyzing the standard to be applied in determining whether investment and general expenses are deductible, the Sixth Circuit stated that:

It is undisputed that investment expenses must be directly and entirely related to the production of investment income. *Commissioner of Internal Revenue v. Volunteer State Life Insurance Company*, 110 F.2d 879, 882 (6th Cir. 1940), cert. denied, 310 U.S. 636, 60 S. Ct. 1080, 84 L. Ed. 2d 1405 (1940); *New World Life Insurance Company v. United States*, 26 F. Supp. 444, 458, 88 Ct. Cl. 405 (1939), affd. 311 U.S. 620, 61 S. Ct. 314, 85 L. Ed. 388 (1940). The Tax Court held that because § 804(c)(1) creates two categories of deductible expenses, i.e., investment expenses and general expenses, the criteria which

---

[1] All section references are to the Internal Revenue Code of 1954 as amended and in effect during the years in issue.

The Tax Reform Act of 1984, Pub. L. 98–369, 98 Stat. 494, repealed the law governing life insurance company taxation here under consideration and replaced it with an entirely new set of rules for tax years beginning after Dec. 31, 1983.

apply to the former do not apply to the latter. Hence, the court stated that general expenses need not meet the directness requirement.

This conclusion was error. The Court of Claims has held that general expenses are deductible as investment expenses if the former can:

With some degree of reasonableness, be said to have some *direct* relationship to the investment department and also to be reasonably susceptible of division and assignment in part to the different departments of the business. [Emphasis supplied.]

*New World Life,* 26 F. Supp. at 459. Moreover, this court in *Volunteer State Life* held that portions of general expenses which are assigned to or included in investment expenses must be directly and entirely related to investment department operations. 110 F.2d at 882. We therefore hold that for general expenses to be deductible under § 804(c)(1), they must be directly related to the production of investment income.

[720 F.2d 420, 423 (6th Cir. 1983); fn. ref. omitted.]

Respondent's primary contention is that petitioner's payment of the Ohio franchise taxes was not directly related to the production of investment income because the payments did not create or produce any amount of gross investment income.

Petitioner, on the other hand, maintains that section 1.804–4(b)(1)(ii), Income Tax Regs., allows a deduction for general expenses "properly allocable" to the investment department, and that once a general expense is "properly allocated" to the investment department the portion so allocated is proximately and primarily related to the investment department and therefore "directly" related to the production of investment income. Petitioner further maintains that the Ohio franchise tax is directly related to the production of investment income because it is a general tax on the privilege of doing business within the State. Finally, petitioner maintains that during the years in issue, the tax was imposed on petitioner's surplus which consisted entirely of investment income and therefore the tax was directly related to the production of that investment income.

Petitioner's first argument must be rejected because it merely substitutes the term "properly allocable" for the "directly related" standard adopted by the Sixth Circuit. Petitioner appears to contend that the act of "properly allocating" general expenses to the investment department automatically provides the necessary direct relationship between the expense and the production of investment income.

However, the clear implication from the Sixth Circuit's opinion is that a general expense must bear a direct relationship to the production of investment income before it can be allocated to the investment department. Absent the requisite direct relationship no portion of a general expense may be allocated to the investment department and deducted as an investment expense.

Petitioner's second argument that the tax is deductible because it is a general tax on the privilege of conducting business within the State must also be rejected. In *Liberty Life Insurance Co. v. United States*, 594 F.2d 21 (4th Cir. 1979), cert. denied 444 U.S. 838 (1979), cited by the Sixth Circuit as possibly supporting petitioner's position (720 F.2d 420, 422 (6th Cir. 1983)), the Fourth Circuit stated in dicta that a tax imposed on the privilege of transacting business within a State "might be apportioned to the investment department" and deductible as an investment expense. *Liberty Life Insurance Co. v. United States, supra* at 24. The tax involved in *Liberty Life* was a South Carolina license fee imposed upon the premium receipts of domestic life insurance companies which was subject to a maximum rate of 5 percent of net income from all sources. The taxpayer argued that because it paid the maximum amount, the tax was imposed on its net income, including investment income, and a portion was therefore properly allocable to the investment department. The Fourth Circuit held that no part of the license fee was allocable to investment expenses because the South Carolina statute clearly intended to tax premium income rather than investment income, and the cap of 5 percent of net income was merely a method of both limiting the amount of tax and providing a simple way for calculating the tax due. *Liberty Life Insurance Co. v. United States, supra* at 23.

In *Liberty Life*, the Fourth Circuit did not specifically require that the tax, as a general expense, be directly related to the production of investment income. Moreover, the Fourth Circuit found that the tax was not deductible because it was intended to be a tax on premium income.

More significantly, payment of the Ohio franchise tax does not per se produce investment income, it merely permits petitioner to engage in the business of conducting a life insurance company operation in Ohio. Expenses incurred in

the acquisition of the right to engage in an activity are entirely distinct from expenses incurred in the actual production of income earned by engaging in the permitted activity. The former merely permit a given activity while the latter actually produce income from the activity. Since the Sixth Circuit held that general expenses are deductible only when they directly relate to the production of investment income, no portion of the Ohio franchise tax may be deducted as an investment expense because payment of the tax simply does not produce investment income.

Petitioner argues that there is nothing in the regulations that requires a portion of a general expense to directly create or produce investment income in order to be deductible as an investment expense. As examples, petitioner cites section 1.804–4(b)(1)(ii), Income Tax Regs., which provides that real estate taxes, depreciation, and other expenses attributable to office space owned by the company and utilized by it in connection with its investment function may be deductible as general expenses assigned to or included in investment expenses. Petitioner maintains that none of these expenses directly create or produce investment income even though a portion of such expenses may be "attributable to" the investment department and "properly allocable" to gross investment income within the meaning of the regulations. We disagree with petitioner. The Sixth Circuit imposes the requirement that general expenses must be directly related to the production of investment income before they may be attributed to the investment department and "properly allocable" to gross investment income. While real estate taxes, depreciation, and other expenses attributable to office space used by the investment department may not literally produce investment income, these expenses are directly attributable to assets "utilized by [petitioner] in connection with its investment function" (sec. 1.804–4(b)(1)(ii), Income Tax Regs.), and in this manner are directly related to the actual production of investment income. The franchise tax, in contrast, is merely permissive and is not per se *utilized* in connection with petitioner's investment function nor is it directly attributable to assets so utilized. Sec. 1.804–4(b)(1)(ii), Income Tax Regs.

Finally, petitioner's argument that the franchise tax is deductible because it is effectively levied on investment

income in the form of surplus must be rejected. The Ohio franchise is imposed on the lesser of: (1) Capital and surplus; or (2) 8⅓ times the gross premiums received on risks in Ohio, less various deductions not relevant herein. Clearly, the tax is imposed directly on surplus or gross premiums, and only indirectly, or not at all, on investment income. In most cases, investment income may form a part of surplus but once investment income has been filtered through the calculations necessary to determine surplus there is no guarantee of a direct relationship between the amount of investment income and the amount of surplus.[2] We believe that we correctly stated the relationship between the tax and petitioner's investment income in our original opinion when we noted that "although the tax was not directly and exclusively related to investment income, it was certainly attributable to the investment part of petitioner's business." *Union Central Life Insurance Co. v. Commissioner*, 77 T.C. at 861. Because the Sixth Circuit requires a direct relationship between a general expense and the production of investment income, we are constrained to hold that petitioner may not deduct any portion of the Ohio franchise tax which is merely attributable to its investment income.[3]

To reflect the foregoing,

*Decision will be entered for the respondent.*

---

[2] In petitioner's case, the Ohio franchise tax statute, Ohio Rev. Code Ann. sec. 5725.18 (Page 1982), imposes a tax on the privilege of being an insurance company on the following base:

(A) The capital and surplus of a domestic insurance company having capital divided into shares, or the surplus of a domestic insurance company not having capital divided into shares, at the value thereof reported by the company in its annual statement for the preceding year filed with and approved by the superintendent of insurance setting forth the admitted and nonadmitted assets and the liabilities of the company, including in such liabilities:

(1) The reserve and unearned premium liabilities computed as provided by law, the same being the amount of debts of an insurance company because of its outstanding policies in gross;

(2) Amounts set apart for the payment of dividends to policyholders, and all actual liabilities set forth in the annual statement; * * *

[3] We expressly do not decide whether the test which the Sixth Circuit has directed us to apply would be applied by this Court in cases appealable to other circuits.