**AETNA LIFE INSURANCE COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

Nos. 264–78T, 556–81T.

United States Claims Court.

Feb. 22, 1989.

As Corrected March 22, 1989.

Having considered the arguments of both parties, this court holds that defendant is correct in asserting that the present issue is not one of fact, but of law. The court, however, disagrees with defendant's treatment of these reserves as falling beyond the scope of the statute at hand and finds that the reserves at issue are "life insurance reserves" within the meaning of I.R.C. § 801(b)(1)(B). Accordingly, defendant's motion for summary judgment must be denied.

Carolyn P. Chiechi, Washington, D.C., for plaintiff.

Michael J. Dennis, with whom was Asst. Atty. Gen. Roger M. Olsen, Washington, D.C., for defendant.

## OPINION

SMITH, Chief Judge.

This case comes before the court on defendant's motion for summary judgment and concerns a tax refund claim for insurance reserve deductions taken in the years of 1961 through 1970.[1] Although this case originally entailed a variety of issues, the sole question remaining is whether the insurance reserves at issue fall within the meaning of "life insurance reserves" under I.R.C. § 801(b)(1)(B).[2]

In its motion, defendant contends that the reserves at issue are not within the definition of "life insurance reserves," and that plaintiff's case should, therefore, be dismissed as a matter of law. Plaintiff, on the other hand, contends that the reserves at issue are "life insurance reserves," and that the motion should be denied, in any event, because the issue before the court is essentially one that must be resolved at trial.

### FACTS [3]

*Insurance Terms and Coverage*

Plaintiff is an insurance company incorporated and with its principal place of business in Hartford, Connecticut. Plaintiff issued a variety of individual and group insurance contracts throughout the tax years in dispute.

All of the contracts involved in this case were issued on behalf of employees or multi-employer groups. Some of these contracts required employee contributions; others did not. While plaintiff issued many such contracts during this time, four sample contracts have been filed with the court in order to simplify these proceedings. Neither party has made any objection to the representative quality of these samples.

The sample contracts provided several different types of coverage. All of the contracts, however, provided life insurance coverage and coverage in the event of an employee's permanent and total disability occurring before the age of sixty-five.

Each of the contracts was renewable by the employer corporations for one-year terms, but plaintiff reserved the right to recalculate the price. Recalculation was allowed once every year and could be done on the basis of plaintiff's experience. This recalculation of price based on experience

1. Docket No. 264–78T relates to the taxable years from 1961 through 1965. Docket No. 556–81T relates to the taxable years from 1966 through 1970.

2. This section along with all of the insurance provisions under the 1959 Insurance Company Tax Act was replaced by an entirely new set of provisions in 1984. *See generally Deficit Reduc-*

*tion Act of 1984,* Pub.L. No. 98–369, 98 Stat. 494, 719–77 (1984).

3. The facts in this section are undisputed by both parties. Plaintiff states, however, that it has conceded most of these facts in the belief that they are no longer pertinent to the issue at hand.

could include factors such as the employee's age, the company's experience with a particular employee and the general risks faced by a particular employee class.

Plaintiff also reserved the right to discontinue coverage if any one of three conditions was met. First, plaintiff could discontinue coverage where fewer than ten employees were currently insured under an employer plan. Second, plaintiff could discontinue coverage where less than 75% of the employees eligible for its noncontributory insurance were actually insured. Lastly, plaintiff could discontinue coverage for employees of certain ages.

If an employee's coverage was discontinued due to his ineligibility or due to his termination or retirement from his employer, the employee could elect to receive an individual life insurance policy with plaintiff in replacement. That policy, however, did not contain all of the benefits provided under the group employee plan. The individual plan only included direct life insurance benefits and did not include other benefits contingent upon disability.

Besides the direct benefit of payment upon death, all of the sample group contracts also provided for continued life insurance coverage without additional premium payments upon proof of disability.[4] Under this benefit, plaintiff was obligated to provide continued life insurance coverage once an employee had become disabled without further cost to the employer. The policy for the disabled employee could no longer be cancelled because of age or because of an employee's termination or retirement. The policy had to remain in force even if the employer was no longer insured by plaintiff.

Two out of the four sample contracts provided an additional monthly income benefit upon the proof of disability. This benefit provides an employee with a monthly cash payment upon employee's disability. This benefit, like the benefit of continued coverage, could not be cancelled by plaintiff and had to remain in force even if the employer was no longer insured by plaintiff.

All of the relevant sections pertaining to the employee disability benefits were contained under the same sections of the sample contracts. Each of these sections was either entitled "Extended Insurance in the Event of Permanent and Total Disability" or "Benefits in Event of Permanent and Total Disability Occurring Before the Age of Sixty-five."

The relevant portion of the first two sample contracts, which simply provided for continued life insurance without further premiums upon proof of disability, specifically stated that

> the Insurance Company is allowed the opportunity to examine the person of the employee when and as often as it may reasonably require before approving such proof, the Insurance Company, as a permanent total disability benefit, extend insurance for the employee under this Title, in an amount determined from the terms of this section and without payment of further premiums, during the further continuance of such total and permanent disability....

The other two sample insurance contracts, which provided for both the continuation of life insurance without further premiums and for monthly income benefits upon proof of disability, were worded slightly different. Yet, neither party contends that these differences were of any legal significance for the purposes of this case.[5]

---

4. Although both parties agree as to the provision's effect, they cannot agree as to its label. Plaintiff contends that this benefit is an extended life insurance benefit, and defendant contends that this benefit is a waiver of premium benefit. For the sake of simplicity, this benefit will be labelled at this time as a continued insurance benefit.

5. The first contract states:

> provided the insurance company is allowed the opportunity to examine the person of the Employee when and as often as it may reasonably require before approving such proof, the Insurance Company, as a permanent total disability benefit, shall (i) pay to the Employee a monthly income benefit, in the amount and to the extent hereinafter provided, at the end of each calendar month following receipt of such proof by the Insurance Company at its

*Reserves Maintained*

Under the laws of Connecticut, plaintiff was required to set aside and maintain reserves for its insurance policies. These amounts were required to be "equal in amount to its liabilities under all policies ... [based] upon consideration of ascertained experience for the purpose of adequately protecting the insured or securing the solvency of the company." C.G.S. § 38–25 (West 1987). Reserves were estimated on the basis of recognized mortality and morbidity tables with assumed rates of interest.

In accordance with Connecticut law, plaintiff maintained reserves for the monthly income benefit and for the continued insurance benefit provided upon disability. These reserves were maintained separately from each other and from plaintiff's other insurance reserves.

According to the National Association of Insurance Commissioner's ("NAIC's") annual statements,[6] plaintiff's reserves for the continuation of life insurance upon disability were maintained under two separate subgroups. The first type of reserve was labeled as a "Disability Reserve on Disabled Lives." This reserve was increased each time an insured employee became disabled and was designed to meet future payments as they come due upon the employee's death. *See, e.g., United Benefit Life Ins. Co. v. McCrory,* 414 F.2d 928, 931 (8th Cir.1969), *cert. denied,* 396 U.S. 1039, 90 S.Ct. 687, 24 L.Ed.2d 684 (1970); *Commissioner v. Oregon Mut. Life Ins. Co.,* 112 F.2d 468, 469 (9th Cir.), *aff'd,* 311 U.S. 267, 61 S.Ct. 207, 85 L.Ed. 180 (1940).

The second type of reserve benefit was labeled as a "Disability Reserve on Active Lives." This reserve was set up from a policy's inception and covered those active employees who were not disabled. The purpose of this reserve was to meet the contingency of disability and this reserve was increased as the probability of an employee's disability became greater over time. *Id.*

*Amounts in Dispute*

From 1961 through 1970, plaintiff, an accrual method taxpayer, considered the reserves maintained for its monthly income benefit and its continued insurance benefit as life insurance reserves within the meaning of I.R.C. § 801(b)(1)(B). Since the reserves were deducted in computing plaintiff's net taxable income, the ultimate effect of this treatment was to lower plaintiff's tax base for the years at issue.

The reserves used in these computations were the company's yearly averages based on its beginning and ending balances. These yearly averages were then factored into a three-step formula required for the computation of tax by all general life insurance companies. *See generally Northwestern Mut. Life Ins. Co. v. United States,* 7 Cl.Ct. 501, 505 (1985), *aff'd,* 795 F.2d 74 (Fed.Cir.1986); Guadina, *Federal Income Taxation of Life Insurance Companies: The Life Insurance Reserve,* 30 Tax L.Rev. 173, 173–75 (1975); Harmon, Jr., *The Pattern of Life Insurance Company Taxation Under the 1959 Act,* 15th Ann.Tul.Tax Inst., 686, 702 (1965) [hereinafter *Harmon* ].

Under Step I of the formula, life insurance companies were required to calculate

---

Home office, and (ii) shall extend the insurance for the Employee under the group policy, without further payments of premiums, in an amount and to the extent hereinafter determined.

The second contract containing the same benefits states in the event that

the participant employee has become permanently and totally disabled, as hereinafter defined,

(i) the Insurance Company shall begin paying to the employee a monthly income benefit in the amount hereinafter provided, payment to begin at the end of the calendar month in

which such proof is received by the Insurance Company at its Office, and

(ii) the Insurance Company shall continue in force during the continuance of such disability, without payment of premiums, an amount of insurance determined ... below[.]

6. The National Association of Insurance Commissioners includes representatives of the Insurance Commissioners from all of the fifty states. It meets several times a year and its purpose is to promote a uniform system of resolving insurance regulatory problems. *See* W. Vance & B. Anderson, *Vance on Insurance* 36–37 (3d ed. 1951).

both their taxable investment income and their gain from operations. I.R.C. § 802(b)(1). The life insurance companies would then include the lesser of their taxable investment income or their gain from operations as income. *Id.*

Under Step II, companies with greater taxable investment income were disregarded but companies with greater gain from operations were required to include an additional amount in income. This additional amount was equal to 50% of the excess of the company's gain from operations over its taxable investment income. I.R.C. § 802(b)(2).

Under Step III, life insurance companies were required to include the amount subtracted from their policyholder surplus accounts when dividends were distributed. I.R.C. § 802(b)(3). The computations under Step III, however, are not relevant to this case.

Plaintiff's inclusion of its monthly income and continuation of insurance reserves under I.R.C. § 801(b)(1)(B) directly enabled plaintiff to lower its taxable income under Step I and II calculations. By including these reserves under I.R.C. § 801(b)(1)(B), plaintiff was able to exclude those reserves which were attributable to the policyholder's share of investment yield from plaintiff's taxable investment income. I.R.C. § 801(a)(1) & (c)(1).[7] *See generally,* G. Lenrow, R. Milo, & A. Rua, *Federal Income Taxation of Insurance Companies* 264–313 (2d ed. 1979) [hereinafter *Taxation of Insurance Companies*]. Inclusion under I.R.C. § 801(b)(1)(B) also allowed plaintiff to exclude those reserves which were attributable to policyholder claims from plaintiff's gain from operations. *Id.* at 315. Thus, when the taxpayer had to include the lesser of its taxable

investment income or its gain from operations under Step I, the use of the above reserves had the effect of lowering both amounts.

This, of course, also lowered both figures under Step II calculations. The components of these reserves which were set aside for the company could be deducted from plaintiff's gain from operations under the Step I and Step II calculations. *Id.* at 323–24. These reserve deductions, however, were available to plaintiff regardless of whether or not they were considered to fall within the ambit of I.R.C. § 801(b)(1)(B), *Taxation of Insurance Companies* at 323–24, and accordingly, are not in dispute here.

In 1961 and 1962, plaintiff had gains from operations in excess of taxable investment income and, therefore, included as taxable income its taxable investment income plus 50% of the amount of the excess of the gain from operations over its taxable investment income. Throughout the remaining years, 1963–1970, plaintiff had gain from operations that were less than its taxable investment income and, therefore, simply included its gain from operations in calculating its taxable income. The amount of monthly income and continuation of insurance reserves included under I.R.C. § 801(b)(1)(B) for all of the above years is as follows:

| Year | Amount |
|------|--------|
| 1961 | $14,714,896 |
| 1962 | $16,897,122 |
| 1963 | $19,335,222 |
| 1964 | $22,473,393 |
| 1965 | $26,973,760 |
| 1966 | $30,178,669 |
| 1967 | $34,872,082 |
| 1968 | $42,829,242 |
| 1969 | $52,762,628 |
| 1970 | $65,124,257 [8] |

---

**7.** Put simply, the policyholders' share of investment yield is the amount of earnings from the reserve which is needed to meet the policyholders' requirements. All of the amount in excess of these requirements are said to belong to the corporation. *Harmon* at 724, 726–27.

**8.** A separate computation of the monthly income benefit and of the continued insurance benefit was provided for the taxable years from

1966 through 1970. This breakdown is as follows:

| Year | Reserves for the Monthly Income Benefit | Reserves for the Continued Insurance Benefit |
|------|------------------------------------------|-----------------------------------------------|
| 1966 | $ 933,562 | $29,245,107 |
| 1967 | $1,321,248 | $33,550,834 |
| 1968 | $1,315,000 | $41,514,242 |
| 1969 | $1,435,344 | $51,327,284 |
| 1970 | $1,750,002 | $63,374,155 |

On audit, the Internal Revenue Service ("IRS") determined that all of the above reserves did not qualify as "life insurance reserves" within the meaning of I.R.C. § 801(b)(1)(B). The record[9] indicates that the deductions taken on the "Disability Reserves on Disabled Lives" for the continued insurance benefit reserve were disallowed for the taxable years of 1961 to 1965 because the agent believed that these reserves were not unaccrued as required under I.R.C. § 801(b)(1)(B).[10] The record indicates that those same reserves were disallowed for the taxable years from 1966 to 1970 because the agent believed that the number of disabled claimants and the actual duration of the policies at issue were improperly computed. The record does not indicate the reason why the reserves on both active and disabled lives for the monthly income benefit or the "Disability Reserve on Active Lives" for the continued insurance benefit were disallowed.

As a result of the audit, plaintiff had to include as income a portion of the amount of reserves excluded from its taxable investment income and from its gain from operations. These inclusions related to the reserves set aside for policyholder claims. The deduction taken on plaintiff's gain from operations for those reserves set aside for the company were not challenged since those reserves were deductible regardless of whether or not they fell within I.R.C. § 801(b)(1)(B).

Plaintiff paid the taxes assessed as required by the IRS audit and filed a refund claim for each of the years at issue. It claimed a refund for the taxes paid on the monthly income benefit. As for the continued insurance benefit upon disability, plaintiff only filed a refund claim for those amounts relating to the "Disability Reserves on Disabled Lives," but not for those amounts relating to the "Disability Reserves on Active Lives."[11]

Each of plaintiff's refund claims for the taxable years between 1961 and 1965 stated:

· Upon the audit of such return by the District Director and the review thereof by the Chief of the Appellate Branch Office, the Commissioner erroneously and illegally determined that the amount of [number varied depending on the year of the refund] should not be included as "life insurance reserves," as defined in Code Section 801(b), for purposes of computing the Company's "adjusted life insurance reserves" for calendar year [of the refund claim],.... In the statement attached to the Commissioner's notice of deficiency such amounts were referred to as "Disability–Disabled Lives."

Such amount is includable as the mean[12] of "life insurance reserves", as defined in Code Section 801(b), for purposes of computing "adjusted life insurance reserves"....

Each of plaintiff's claims for the taxable years from 1966 through 1970 were similar, and stated, as follows:

On the United States Life Insurance Company Income Tax Return filed by the

---

No such breakdown was provided by either party for the taxable years from 1961 through 1965.

**9.** All of the documentation concerning this dispute at the administrative level was filed by defendant. The court has assumed this information to be true since none of these documents were contradicted by plaintiff.

**10.** During this administrative stage of the dispute, plaintiff conceded to the agent that a small portion of its reserves had probably accrued, and, therefore, should not fall within the ambit of I.R.C. § 801(b)(1)(B). Plaintiff then promised that it would eliminate these accrued reserves from its claim, but it is unclear from the record whether these accrued reserves were, in fact, excluded. The court must, accordingly, require that plaintiff reduce its deductions so that these accrued reserves are excluded from its refund claim if plaintiff has not already done so.

**11.** The reason that the "Disability Reserve on Active Lives" was excluded from plaintiff's refund claim is not disclosed upon review of the record, but plaintiff has made no attempt to include these reserves as part of its refund claim before this court.

**12.** The mean of the life insurance reserves as defined in this case is the middle number between the beginning and the ending reserve balance. See §§ 1.805–6(b)(2), 1.805–6(d) (example 2).

Company for the calendar year [year depended upon the year at issue in the refund claim], the Company included as the mean of 'life insurance reserves', ... which amount is the ... [middle number between] the beginning and end[ing balance for] the taxable year set aside by the Company as a reserve for approved premium waiver claims and for disability claims under its Group Term Life and Group Stock Paid Up Life Policies.

Upon the audit of such return, the Commissioner erroneously and illegally determined that the amount of [number varied depending on the year of the refund] should not be included as 'life insurance reserves,' as defined in Code Section 801(b), for purposes of computing the Company's 'adjusted life insurance reserves' for calendar year [of the refund claim].

Such amount is includable as the mean of 'life insurance reserves,' as defined in Code Section 801(b), for purposes of computing "adjusted life insurance reserves...."

The parties were unable to resolve their dispute at the administrative level. Plaintiff, therefore, brought suit in the Court of Claims in 1978 for the taxable years 1961 through 1965, and brought suit in 1981 for the taxable years 1966 through 1970. These claims were subsequently transferred to this court when the Court of Claims was reorganized in 1982. Both petitions included a claim for deduction of plaintiff's reserves maintained for its monthly income benefits. Both petitions also included a claim for the deduction of plaintiff's "Disability Reserves on Disabled Lives" which it maintained for the continuation of life insurance upon disability benefit.

## DISCUSSION

Before defendant's motion for summary judgment was filed, plaintiff conceded that its reserves maintained for the provision of monthly income benefits to disabled employees did not fall within the meaning of I.R.C. § 801(b)(1)(B).[13] Thus, only the reserves maintained for the benefit of continued life insurance upon disability remain to be decided by the court.

Many of the issues with respect to this continued insurance benefit have been conceded by defendant. Defendant concedes that the reserves at issue were computed or estimated on the basis of recognized morbidity or mortality tables. Defendant further concedes that these reserves were based on properly assumed rates of interest and that they were set aside in accordance with state law.

Defendant no longer raises the contentions initially brought forth by its examining agents at the administrative level. It now concedes that the reserves at issue were unaccrued. It also now concedes that the actual ages of the disabled claimants and the actual duration of the policies involved were not improperly computed.

The central issue which has emerged at this point concerns the proper interpretation of former I.R.C. § 801(b)(1)(B), which defined life insurance reserves as

[amounts] which are set aside to mature or liquidate ... claims arising from life insurance, annuity, and noncancellable health and accident insurance contracts (including life insurance or annuity contracts combined with noncancellable health and accident insurance) involving, at the time with respect to which the reserve is computed, life, health, or accident contingencies.

Defendant contends the plaintiff's "Disability Reserves on Disabled Lives" were waiver of premium benefits and were set aside for the contingency of disability. As such, defendant contends that they were cancellable health and accident insurance contracts as a matter of law, and were, therefore, not within the confines of I.R.C. § 801(b)(1)(B).

It is clear under the law, as plaintiff concedes, that the reserves at issue must

---

**13.** The service has formally expressed its view that a reserve for the payment of monthly income upon disability is not a life insurance reserve, but a health or accident insurance reserve. Gen.Couns.Mem. 37, 475 (Apr. 23, 1978); *see* Rev.Rul. 80–115, 1980–1 C.B. 138 (clarifying Rev.Rul. 70–190, 1970–1 C.B. 150).

fall outside the scope of I.R.C. § 801(b)(1)(B) should this court agree that the continuation of insurance benefit is a form of health or accident contract. After all, the plain language of the statute only includes noncancellable health and accident policies and cannot be extended to include cancellable policies, as well. *E.g., Superior Life Ins. Co. v. United States,* 462 F.2d 945, 951 (4th Cir.1972); *Alinco Life Ins. Co. v. United States,* 178 Ct.Cl. 813, 833, 373 F.2d 336, 347 (1967) (per curiam). The policies at issue here, meanwhile, must be considered as cancellable because plaintiff did not have to renew the premiums for these policies at a specified level. *See, e.g., Economy Fin. Corp. v. United States,* 501 F.2d 466, 481–82 (7th Cir.1974), *cert. denied,* 420 U.S. 947, 95 S.Ct. 1328, 43 L.Ed.2d 425 (1975); Treas.Reg. § 1.801–3(c). Instead, plaintiff had the power to unilaterally change its premiums every year on the basis of its prior experience.[14] *See* Treas.Reg. § 1.801–3(c).

Although plaintiff concedes that the reserves at issue are not excludable because of their cancellable nature should they be considered to arise from health or accident insurance, plaintiff refuses to concede that the benefit of continued life insurance coverage upon disability is a waiver of premium benefit under a health or accident contract. Plaintiff, instead, contends that this benefit is a provision within a life insurance contract under I.R.C. § 801(b)(1)(B), and that this benefit is an extended life insurance benefit, not a waiver of premium benefit. Plaintiff, therefore, contends that it is irrelevant whether the contract provision at issue is cancellable or not.

*Allegation of Variance*

Before the court can address the central issue at hand, it must first address defendant's allegation that plaintiff has changed its present legal position from the position taken at the administrative level. Defendant contends that plaintiff has changed its

legal position in two respects. First, defendant contends that plaintiff had maintained that the benefit at issue was health and accident insurance and not life insurance. Second, defendant contends that plaintiff had maintained that the benefit at issue was a waiver of premium benefit, and not a benefit of extended life insurance.

■ Defendant's argument is essentially one of variance. Under the doctrine of variance, prior to filing tax refunds before the Claims Court and the district courts, taxpayers must have previously filed an administrative refund claim which "sets forth in detail each ground upon which a … refund claim is claimed and facts sufficient to apprise the Commissioner of the exact basis thereof." Treas.Reg. § 301.6042–2(b)(1). Accordingly, only claims and facts raised at the administrative level, and no others, can be asserted before the court. *E.g., Cook v. United States,* 220 Ct.Cl. 76, 86–87, 599 F.2d 400, 406 (1979); *Scovill Mfg. Co. v. Fitzpatrick,* 215 F.2d 567, 569 (2d Cir.1954); *see, e.g., Pinckes v. United States,* 7 Cl.Ct. 570, 571 (1985) (if other facts or legal grounds are raised, they must be dismissed); *Hermes Consol. v. United States,* 14 Cl.Ct. 398, 404 (1988). The purpose behind this rule is to permit any correction of errors by the agency at the administrative level so that unnecessary litigation is avoided. *E.g., Neptune Mut. Ass'n v. United States,* 13 Cl.Ct. 309, 321 (1987), *vacated on other grounds,* 862 F.2d 1546 (Fed.Cir.1988); *Northern Ill. Gas Co. v. United States,* 12 Cl.Ct. 84, 90 (quoting *Union Pac. R.R. v. United States,* 389 F.2d 437, 442, 182 Ct.Cl. 103, 109 (1968)), *aff'd,* 833 F.2d 1582 (Fed. Cir.1987).

1. *Plaintiff's Position at Administrative Level*

■ Upon review of plaintiff's administrative refund claim,[15] the court finds that plaintiff did not previously treat its benefit

---

**14.** It is also possible that plaintiff's right to terminate its policy where less than a certain prescribed percentage were insured may also have rendered plaintiff's policy as cancellable. This court will not expressly rule on this issue, however, since the cancellability of this policy is

clear in light of plaintiff's unilateral right to change its premiums.

**15.** As stated earlier, all of these documents were filed by defendant without challenge from plaintiff.

for continued insurance coverage upon disability as a provision of health or accident insurance. In all of its administrative refund claims for the taxable years from 1961 to 1965, plaintiff consistently maintained that its reserves were "set aside by the company as a ["]Disability Reserve on Disabled Lives["] to provide for the company's unaccrued liability, and that [s]uch amount[s] ... [were] includable as ...' life insurance reserves as defined in Code section 801(b).'" Plaintiff repeated this position in its administrative refund claims for the taxable years from 1966 through 1970. At no point in any of the claims throughout all of the years at issue did plaintiff state, as defendant contends, that these reserves were maintained for health or accident insurance.[16]

 Defendant also refers the court to several other administrative documents in support of its argument. These documents include plaintiff's initial taxpayer protests and plaintiff's form 870–AD.[17]

Before the court can address the merits of the information contained in these documents, the court must address the weight of these documents themselves. There is one central problem with utilizing a taxpayer protest or Form 870–AD in support of an argument for variance. Neither document is a jurisdictional prerequisite to the filing of a refund claim in the Claims Court. The only jurisdictional document required is the administrative refund claim. *See,* I.R.C. § 7422(a); Treas.Reg. § 301.6402–2. Upon review of the case law, the court realizes that circumstances have arisen where other administrative documents besides the administrative refund claim were used as grounds for the granting of jurisdiction. *See United States v. Pierotti,* 154 F.2d 758, 761 (9th Cir.1946) ("Affidavits, letters or other statements filed with the Commissioner in support of the claim may all be considered as part of the claim for refund, if they bring the matters in controversy to the attention of the Commissioner...."); *Danly Mach. Corp. v. United States,* 356 F.Supp. 1284, 1288 (N.D. Ill.1972) ("[I]nformation can be presented through various sources other than the original claim filed, such as affidavits, statements, conferences and negotiations so long as the end result is the presentation of the full amount of information available and the narrowing of the controversy"), *aff'd,* 492 F.2d 30 (7th Cir.1974); *Clark v. United States,* 143 F.Supp. 165, 166 (S.D.Cal.1956). Yet, the court has been unable to find any case law which has divested the court of jurisdiction on the basis of these other documents where a court had found the administrative refund claim to be sufficient by itself.

 Even if these other documents could be used as grounds for precluding jurisdiction in this case, the actual documents submitted to the court by defendant do not support its position. Neither taxpayer's Form 870–AD nor its initial protests refer to the benefit at issue as health or accident insurance. Taxpayer's form 870–AD merely stated that the reserves at issue were "Disability Reserves on Disabled Lives" and that the item was allowable as a life insurance reserve under I.R.C. § 801(b). As for the taxpayer protests, they simply

---

**16.** Defendant seems to suggest that plaintiff's mere reference to the continued life insurance benefit as a disability benefit is sufficient by itself for defendant to prevail on the issue of variance. The problem with this argument is that it implicitly assumes that all forms of disability insurance must be health or accident insurance. Yet, if the court were to make such an assumption in this case, it would simply be avoiding the central issue at hand. After all, plaintiff concedes that this benefit is a disability benefit. Rather, plaintiff's dispute is directed toward whether this form of disability benefit must always be considered as a health or accident insurance contract rather than as a life insurance contract.

**17.** Form 870–AD is entitled a "Waiver of Restrictions on Assessment and Collection of Deficiency in Tax and Acceptance of Overassessment." The effect of this waiver by taxpayers is to allow the IRS the right to begin assessment and collection after the prescribed time period. The taxpayer's submission of this waiver also forfeits its right to file a petition for redetermination before the Tax Court. The purpose behind this extension of time is to provide the service with the time it needs so that it can pursue settlement. *See generally* F. Burnett & G. Kafka, *Litigation of Federal Tax Controversies* § 3.05 (1986).

refer to the benefit at issue as a disability benefit without further qualification.[18]

The court notes that it does understand how defendant may have misunderstood the basis of plaintiff's refund claim. The refund claims did not identify the present issues before the court with any specificity. They only defined plaintiff's reserves as life insurance reserves within the meaning of section 801(b). Life insurance reserves under I.R.C. § 801(b), however, could arise from either "life insurance contracts" or, from "noncancellable health and accident insurance contracts" as defendant has suggested. None of the administrative documents submitted attempted to clarify this point. Plaintiff's counsel before the court, however, has always been clear and consistent on spelling out the point.

While the court may find a plaintiff's lack of specificity as grounds for denying jurisdiction under some other circumstances, *see Union Pac. R.R. v. United States,* 182 Ct.Cl. at 111–12, 389 F.2d at 444, the court has jurisdiction over plaintiff's claim in this instance. If plaintiff's claim lacked clarity, it was not due to any error committed by plaintiff. Plaintiff's taxpayer protests submitted to the court by defendant reveal that defendant's original challenge was not based on its assertion that the contracts at issue were cancellable health or accident insurance. Instead, plaintiff's protests for the years from 1961 to 1966 indicate that the IRS challenged the deductibility of its reserves because they were allegedly not unaccrued. As for the years from 1966 to 1970, plaintiff's protests indicate that these reserves were challenged by the IRS because the actual ages of the disabled claimants and the actual duration of the policies involved were said to be improperly computed.

Thus, the failure to define the insurance contracts at issue was not due to any fault on the part of plaintiff. After all, it was not plaintiff who changed its position, but defendant. Under such circumstances, plaintiff cannot be denied the right to have its claim heard. *See Laurel Hill Cemetery Ass'n v. United States,* 427 F.Supp. 679, 685 (E.D.Mo.) (variation stemming from the government's error as to the identity of the taxpayer could not undo taxpayer's jurisdiction).

## 2. *Waiver of Premium Versus Extended Life Insurance*

■ Defendant also contends that plaintiff's attempt to treat the provision at issue as an extended life insurance benefit rather than as a waiver of premium benefit constitutes a variance from earlier assertions. Upon review of the taxpayer's protests, refund claims, and other administrative documents, the court finds that this assertion by defendant is correct with respect to the years from 1966 to 1970.

In each of its refund claims for the taxable years between 1966 and 1970, plaintiff stated that its "Disabled Reserves on Disabled Lives" reserve arose from "approved premium waiver claims." Plaintiff's taxpayer protests for those years also include statements to the same effect. Thus, it is clear that plaintiff's attempt to label the benefits at issue for these years as extended life insurance represents a departure from plaintiff's earlier assertions at the administrative level.

Defendant's assertion of variance with respect to the years between 1961 and 1965 does not have the same force. Plaintiff's administrative refund claims did not define the benefit at issue as a waiver of premium benefit. These refund claims simply stated that plaintiff's reserves were "Disability Reserves on Disabled Lives" within the meaning of I.R.C. § 801(b)(1)(B).

---

**18.** Defendant also contends that plaintiff changed its position from the one asserted in its petitions. Upon examination of these petitions, the court cannot agree. Both petitions, like all of plaintiff's administrative refund claims, refer to plaintiff's insurance reserves under I.R.C. § 801(b), and as "Disability Reserves on Disabled Lives." The court must, therefore, find that the information contained in plaintiff's petitions provided sufficient notice of plaintiff's arguments for the same reasons that the court found plaintiff's arguments were not at variance with its administrative refund claims. *See generally Electrical Constr. & Maint. v. Maeda Prod. Corp.,* 764 F.2d 619, 623 (9th Cir.1985).

The court realizes that it could be argued that the refund claims for the years from 1966 to 1970 have tainted the refund claims for years from 1961 to 1965 so that the benefit involved in the earlier years should be treated as a waiver of premium benefit like the same benefit involved in the later years. The court must reject any such argument, however. At present, there is no case law which has interpreted an item in refund claims for certain years to be imputed into other similar claims which contained no interpretation of the same item. The court is not persuaded and sees no reason to create such a rule in this situation. Plaintiff's interpretation of the benefit at issue as a waiver of premium benefit was not contained in the earlier refund claims from 1961 to 1965. Rather, the interpretation of the benefit at issue as a waiver of premium benefit was contained only in the refund claims filed for the later years between 1966 and 1970.

The court will, therefore, permit plaintiff to claim that the benefit of continued insurance coverage is extended life insurance for the years from 1961 through 1965. As for the later years between 1966 and 1970, plaintiff is precluded from arguing that the benefit at issue is not a waiver of premium benefit.

*Suitability for Summary Judgment*

1. *Terminology*

■ Plaintiff's central argument against defendant's motion for summary judgment is one of procedure. In essence, plaintiff contends that the present issue before the court is not one of law, but of fact and, therefore, not suitable for resolution by summary judgment. *Sweats Fashions v. Pannill Knitting Co.*, 833 F.2d 1560, 1565 (Fed.Cir.1987).

Plaintiff argues that the issue before the court is factual in two respects. Plaintiff first refers the court to the parties' dispute over whether the benefit at issue is an extended life insurance benefit or whether the benefit at issue is a waiver of premium benefit. Plaintiff then refers this court to both parties' dispute over whether the benefit at issue is a provision of health or accident insurance or whether the benefit

at issue is a provision of life insurance. Upon review, this court fails to find any factual element in either of these disputes which would provide the basis for avoiding resolution of defendant's motion for summary judgment.

The first dispute over whether the benefit at issue is an extended life insurance benefit or a waiver of premium benefit is simply without significance for this question. While the parties cannot agree on the benefit's label, they do agree as to its substance. There is no dispute that this benefit ends an employer's obligation to pay premiums on an employee's life insurance policy if that employee becomes disabled. There is also no dispute that a disabled employee's coverage continues in force even after his employer has terminated its group policy with plaintiff. Thus, the only disagreement is over the benefit's label, and the label of a contract is clearly not determinative of the contract's substance. *See, e.g., Hooker Chem. & Plastics Corp. v. United States*, 219 Ct.Cl. 161, 173, 591 F.2d 652, 658 (1979) (per curiam); *Bernatschke v. United States*, 176 Ct.Cl. 1234, 1239, 364 F.2d 400, 404 (1966).

Even if this court were to attribute some significance to these labels other than on the variance issue, this court would still be compelled to rule against plaintiff. All of the treatises on insurance law have overwhelmingly considered the benefit of continued coverage without further premiums upon proof of disability as a waiver of premium benefit. *E.g.,* H. Horne, *Life Insurance,* 360–62 (1938); S. Huebner & K. Black, *Insurance,* 1197–98 (10th ed. 1983) [hereinafter *Insurance*]; D. McGill, *Life Insurance,* 737–38, (1967) [hereinafter *McGill*]; E. Wightman, *Life Insurance Statements and Accounts,* 310–11, (1962); *see, e.g.,* K. Herrick, *Total Disability Provision in Life Insurance Contracts* 10–11 (1956); A. Hunter & J. Philips, *Disability Benefits in Life Insurance Policies* 1–11 (1932). Although case law has not expressly ruled on this issue, it has assumed that this benefit was a waiver of premium benefit as well. *Pan–American Life Ins. Co. v. Commissioner,* 38 B.T.A. 1430, 1432

(1938), *aff'd*, 111 F.2d 366 (5th Cir.1940), *accord Monarch Life Ins. Co. v. Commissioner*, 38 B.T.A. 716, 718–19 (1938), *aff'd*, 114 F.2d 314 (1st Cir.1940).[19]

Plaintiff attempts to distinguish the benefit in this case from the benefit discussed in the above cases by contending that the benefit in this case is part of a group plan rather than part of an individual plan. This distinction, however, is without merit. There is no justifiable rationale which would separate this benefit from the waiver of premium benefit provided in an individual policy nor has such a rationale been provided by plaintiff. In fact, upon further review of the case law and the treatises, no such distinction is made. The case law and treatises equally consider the insurance benefit of continued coverage upon disability as a waiver of premium benefit in the context of group policies. *Group Life & Health Ins. Co. v. United States*, 660 F.2d 1042, 1044–45, 1050 (5th Cir.1981), *rev'g and remanding on other grounds*, 42 A.F.T.R. 2d 78–6281, 78–6288 (N.D.Tex.1978), *cert. denied*, 457 U.S. 1132, 102 S.Ct. 2958, 73 L.Ed.2d 1349 (1982); B. Beam *Group Insurance: Basic Concepts and Alternatives*, 75–76 (2d 1984); Filers & R. Crowe, *Group Insurance Handbook* 115–116 (1965); D. Gregg, *Group Life Insurance* 56–58 (1957); *McGill* 690–91 R.

In the face of this overwhelming authority, plaintiff's argument only stands supported by the single affidavit of its expert, Daniel J. McCarthy. Such a scintilla of evidence in the face of authority is not enough to avoid a motion for summary judgment, and the mere fact that this denial is in the form of an affidavit cannot render this result otherwise. *See Sweats Fashion, Inc. v. Pannill Knitting Co.*, 833 F.2d at 1562–63.

Plaintiff's attempt to characterize the benefit at issue as something other than a waiver of premium benefit is unconvincing in any event. Plaintiff attempts to discount this benefit as a waiver of premium benefit because the group policyholders "were [already] charged for such ... insurance prior to the occurrence of the disability." Plaintiff's Statement of Genuine Issues at 7. Such a distinction simply makes no sense. All additional coverage must entail an added direct or indirect cost. Plaintiff provides no reason, nor can the court imagine a reason why the waiver of premium benefit would have an effect to the contrary.

### 2. *Practical Effect*

The dispute over whether the insurance benefit of continued coverage upon proof of disability is health or accident insurance versus life insurance under I.R.C. § 801(b)(1)(B) is without a doubt much more substantive. This dispute, however, cannot be grounds for avoiding the resolution of this motion for summary judgment. After all, the contract provision at issue is not in question, and both parties agree as to its effect. They only disagree as to its meaning under the Code, and the meaning of a term under the Code presents a question of statutory construction, which is clearly a question of law. *E.g., United States v. Montoya*, 827 F.2d 143, 146 (7th Cir.1987); *American Nat'l Ins. Co. v. United States*, 231 Ct.Cl. 604, 621–22, 690 F.2d 878, 888 (1982).

Plaintiff attempts to bypass this point by contending that it needs its experts in order to support its position, and that resolution of this issue upon motion for summary judgment deprives plaintiff of much of its case. Despite the equitable appeal of plaintiff's argument, the introduction of expert testimony in reviewing these questions of law cannot be allowed unless the question is concerned with state law or a technical provision peculiar to the insurance industry. *See American Nat'l Ins. Co. v. United States*, 690 F.2d at 888, 231 Ct.Cl. at 641–42 (citing *Consumer Life Ins. Co. v. United States*, 207 Ct.Cl. 638, 524 F.2d 1167 (1975)), *aff'd*, 430 U.S. 725, 97 S.Ct. 1440, 52 L.Ed.2d 4 (1977); *Alinco Life Ins.*

---

**19.** Besides the overwhelming number of cases and treatises in defendant's favor, this court must also make reference to the N.A.I.C. reports on plaintiff's reserves from 1961 to 1970. Each and every one of these reports referred to the benefit at issue as a waiver of premium benefit. Plaintiff has not even made an attempt to rebut this point.

*Co. v. United States*, 178 Ct.Cl. at 841–42, 373 F.2d at 352–53. Neither party has alleged that state law is at issue. This court also does not deem this issue to be of such a technical nature that the testimony of experts would provide helpful guidance in bringing this issue to a proper resolution. *Alinco Life Ins. Co.*, 178 Ct.Cl. at 841–42, 373 F.2d at 352–53. These are issues of law, not fact, suitable for resolution by motion for summary judgment.

*Life Versus Health and Accident Insurance—The Merits*

■ The issue of whether a waiver of premium benefit upon disability falls within the meaning of life insurance or cancellable health and accident insurance under I.R.C. § 801(b)(1)(B) presents a novel question to the court. It is an issue upon which no clear answer can be found in the Code or in the attendant regulations. *See* I.R.C. §§ 801–820; Treas.Reg. § 1.804–4.

A review of I.R.C. § 801(b)(1)(B)'s legislative history is equally unhelpful.[20] The history behind that section's enactment under the Life Insurance Company Act of 1959 indicates that I.R.C. § 801(b)(1)(B) was nothing more than a restatement of former I.R.C. § 201(c)(2). S.Rep. No. 291,

86th Cong., 1st Sess. 18 (1959). The history behind former I.R.C. § 201(c)(2) indicates that the requirement of life insurance or of noncancellable health or accident insurance was first accepted by Congress in 1942. S.Rep. No. 1631, 77th Cong., 2d Sess. 32 (1942); H.R.Rep. No. 2333, 77th Cong. 2d Sess. 27–28 (1942). But the history of I.R.C. § 201(c)(2) fails to define the meaning of these terms. *Id.* The only guidance provided by the history of this section stems from the Senate Report which indicates that this requirement was a codification of the prior regulations. S.Rep. No. 1631 at 32. These prior regulations, however, simply limit the scope of life insurance reserves to reserves arising from life insurance or noncancellable health or accident insurance. The regulations, like I.R.C. § 201(c)(2), do not provide any definition of these terms. Section 19.-203(A)(2) of Regulations 101 (1984).[21] The prior code section in effect at that time also provides no assistance in interpreting this definition since that section applied to "all reserve funds required by law." I.R.C. § 244(b); *see also* S.Rep. No. 275, 67 Cong., 1st Sess. 20 (1921); H.R.Rep. No. 350, 67th Cong., 1st Sess. 14 (1921).

**20.** Although the legislative history behind I.R.C. § 801(b)(1)(B) is of little assistance in the interpretation of the issue at hand, there is some interesting comment contained in the legislative history subsequent to that section's enactment. When I.R.C. § 801(b)(1)(B) was repealed as part of the Deficit Reduction of 1984, two of the committee reports included some discussion on the definition of a life insurance contract under I.R.C. § 801(b)(1)(B). In each of these reports, the committees concluded that there was no clear statutory definition of a life insurance contract in that section. Senate Comm. on Finance, 98th Cong., 2d Sess., *Explanation of Provisions* approved by the Comm. on March 21, 1984, 571 (Comm. Print 1984); Joint Comm. on Taxation, 98th Cong., 1st Sess., *Background on the Taxation of Life Insurance Companies and Their Products* 40 (Comm. Print 1983).

One of these committee reports did provide a rule of thumb, however. The Senate Committee report generally defined a life insurance contract "as a contract with a life insurance company which depends in part on the life expectancy of the insured and which is not ordinarily payable in full during the life of the insured." Senate Finance Comm., 98th Cong. 2d Sess., *supra*, at 571; *see also* Cong., 2d Sess. 110

(1954). Under this general rule, then, the waiver of premium benefit at issue would be considered a life insurance contract under I.R.C. § 801(b)(1)(B) since it depends in part on the life expectancy of the insured and is not payable in full until the insured's death. Yet, this court is reluctant to rule in favor of plaintiff on the basis of a definition which is admittedly only general in nature. Furthermore, definitions of terms found only in legislative histories are somewhat suspect as they may or may not carry the true intent of Congress as a whole.

**21.** The Regulations under the prior Code did attempt to exclude reserves, such as those involved in this case, which "estimated [the] value of future premiums which have been waived on policies after proof of total and permanent disability." Article 971 of Regulations 86 (1935) (amending Article 971 of Regulations 74). These regulations were then overturned by the Supreme Court stating that such reserves were not accrued "but remain[ed] a contingency, still uncertain in duration and amount." *Helvering v. Oregon Mut. Life Ins. Co.*, 311 U.S. at 267, 61 S.Ct. at 207. The court will not draw a negative inference from that decision since the question of accrual is not at question in this case.

Both parties have found case law in their favor. Compare *Group Life and Health Insurance v. United States,* 42 A.F.T.R. 78–6282, 78–6289—90 (N.D.Tex.1978) (treated the waiver of premium benefit as life insurance), *rev'd and remanded on other grounds,* 660 F.2d at 1042 with *Helvering v. Oregon Mut. Life Ins. Co.,* 311 U.S. at 271, 61 S.Ct. at 209 (treating the waiver of premium benefit as health and accident insurance). The question of whether waiver of premium benefits were health or accident or life insurance was not at issue in the above cases; therefore, these cases are not persuasive. They simply assumed that the waiver of premium benefit was either health or accident insurance or life insurance and did not focus on the issue here. *Id.*

Defendant also cites to another line of cases which refer to the waiver of premium benefit as disability insurance. *Monarch Life Ins. Co. v. Commissioner,* 38 B.T.A. at 725; *Pan–American Life Ins. Co. v. Commissioner,* 38 B.T.A. at 1439. While this court does not disagree with defendant's reading of these cases, this court must also dismiss this line of authority from its consideration because the use of these cases in this situation simply begs the question. Neither party denies that the benefit at issue is a disability benefit. The question which must be resolved is whether this type of disability benefit is health or accident insurance or life insurance within the meaning of I.R.C. § 801(b)(1)(B).[22]

The Service's rulings on this issue are as divided and as unhelpful as the cases. These rulings, like the cases, are divided as to whether the benefit at issue is health or accident insurance or life insurance. *Compare* Rev. Rul. 70–190, 1970–1 C.B. 150; Priv.Ltr.Rul. 71–06–179440A (June 17, 1971); Priv.Ltr.Rul. 78–34–009, with Rev. Rul. 80–115; 1980–1 C.B. 138; G.C.M. 37,-475 (Mar. 23, 1978); Priv.Ltr.Rul. 79–18–009 (Jan. 16, 1979). These rulings, like the cases, also fail to provide any rationale for their conclusions, *id.,* and therefore, must

also be given little weight in this court's consideration.

State law, as well, provides no easy solution to this problem. While in some instances the Code requires life insurance reserves to be in compliance with state law, see I.R.C. § 801(b)(2)(C), there is no such requirement in this area. Even if the Code had required this court to render its decision with reference to state law, the question before the court would still be left unanswered. Upon review of Connecticut law, this court finds the cases even less on point than those which exist under federal law. *See Lowe v. Hancock Mutual Life Ins. Co.,* 135 Conn. 456, 66 A.2d 124 (City Ct.1949); *Day v. Walsh,* 132 Conn. 5, 42 A.2d 366 (Super.Ct.1945); *Lickteig v. Travelers Ins. Co.,* 10 Conn.Supp. 378 (C.P. 1942); *Hallihan v. Mut. Life Ins. Co. of New York,* 9 Conn.Supp. 209 (Super.Ct. 1935).

In the absence of any significant authority on behalf of either side, this court is left with two very simple but persuasive arguments. On the one hand, defendant contends that the waiver of premium benefit is essentially health and accident insurance since the contingency which activates the benefit is the loss of health or an accident which causes disability. To defendant, the waiver of premium benefit "constitutes in effect the payment by petitioner of disability benefits to the same extent as if a totally disabled policyholder had paid the annual premium in full and petitioner had thereupon repaid to the policyholder in cash the amount of the benefits provided for." *Monarch Life Ins. Co. v. Commissioner,* 38 B.T.A. at 725; *see Pan–American Life Ins. Co. v. Commissioner,* 38 B.T.A. at 1439. On the other hand, plaintiff makes the equally persuasive argument that the contract is essentially a life insurance contract since the real contingency for payment in this case is still death. *See* J. Magee, *Life Insurance* at 3; C.G. Couch, R. Anderson & M. Rhodes, *Couch on Insurance* 1:73 (2d Ed.1984). After all, no

---

**22.** Defendant cites several treatises which also indicated that the waiver of premium benefit was a disability benefit. *Insurance* at 198; McGill at 737–38. These treatises must be dismissed under the same rationale.

actual payments will be made to the policy-holder beneficiary until that time.

It seems to the court that the waiver of premium benefit cannot be strictly described as either a life insurance contract or as a health or accident insurance contract. The waiver of premium benefit must really be defined as a combination of both since this benefit involves two contingencies rather than one. In order for the company to incur liability from this provision, the insured must first become disabled due to an accident or loss of health. The insured must then die while this disability continues. Only then does the plaintiff incur a monetary obligation to the policyholder beneficiary.

The reserves held by plaintiff and other insurers carrying this benefit reflect the existence of these two contingencies. As stated earlier, plaintiff maintained both a "Disability Reserve on Active Lives" and a "Disability Reserve on Disabled Lives." The reserve on active lives was designed to meet the possibility of disability. Once an employee became disabled, the reserve on active lives was then reduced to cover the cost of carrying the waiver of premium benefit. This amount removed from the active lives reserves was then added to the reserves on disabled lives. The reserves on disabled lives would then be reduced upon the disabled employee's death. *See, e.g., United Benefit Life Ins. Co. v. McCrory,* 414 F.2d at 931; *Commissioner v. Oregon Mutual Life Ins. Co.,* 112 F.2d at 468.

In light of this dual contingency, this court finds that this benefit is partially health or accident insurance and partially life insurance. The portion of these reserves entitled "Disability Reserves on Active Lives" must be considered health or accident insurance since the contingency which will reduce that reserve will be the insured's disability due to an accident or the insured's loss of health. The portion of these reserves entitled "Disability Reserve on Disabled Lives," on the other hand, must be considered life insurance since any payment will be due only upon a disabled employee's death.

## CONCLUSION

The benefit of providing for the continuation of life insurance upon disability is clearly described as a waiver of premium benefit. Contrary to the assertion of either party, this benefit contains both elements of accident or health insurance and elements of life insurance. The "Disability Reserve on Active Lives" relates to health or accident insurance and the "Disability Reserve on Disabled Lives" relates to life insurance.

Because plaintiff's refund claim only included a claim for those reserves relating to the "Disability Reserve on Disabled Lives," this court must rule that all of the reserves at issue are life insurance reserves within the meaning of I.R.C. § 801(b)(1)(B). Defendant's motion for summary judgment must, therefore, be denied as a matter of law. Both parties are also directed to file a status report within ninety days in order to notify the court of the need for any further proceedings and to resolve any issues that may remain in this case.

IT IS SO ORDERED.