**METROPOLITAN LIFE INSURANCE COMPANY, Plaintiff,**

v.

**The UNITED STATES, Defendant.**

Nos. 621–84 T, 424–89 T.

United States Court of Federal Claims.

Dec. 13, 1993.

John S. Nolan, with whom were Jean A. Pawlow and Alexander Zakupowsky, Jr., of counsel, Washington, DC, for plaintiff.

Thomas D. Sykes, U.S. Dept. of Justice, Tax Div., Washington, DC, for defendant.

## OPINION

SMITH, Chief Judge.

This case is before the court on the parties' cross-motions for summary judgment with respect to paragraph 7(b) of the complaint in Cl.Ct. No. 424–89 T.[1] Plaintiff asserts that the reserve it established to fund payments made under group life insurance contracts is a "life insurance reserve" within the meaning of section 801(b)(1)(B) of the Internal Revenue Code ("I.R.C.") of 1954. This assertion, if true, would allow plaintiff to decrease its taxable investment income by interest credited to the reserve pursuant to a formula provided in I.R.C. §§ 804 and 805 for computing taxable investment income. The Internal Revenue Service, however, disagrees with plaintiff's characterization of the reserve and has denied plaintiff recognition of the interest plaintiff credited to the reserve in its calculation of taxable investment income. Accordingly, plaintiff has filed this action to recover for its alleged overpayment of federal income taxes for the years 1967–1977, and interest thereon.

After careful consideration of the briefs filed by the parties, and after oral argument, the court grants plaintiff's motion for summary judgment and denies defendant's motion.

## FACTS

Plaintiff Metropolitan Life Insurance Company ("Metropolitan") is a mutual life insurance corporation organized and existing under the laws of New York. During the taxable years involved, plaintiff issued approximately 620 employer-sponsored group life insurance contracts under which specified levels of term life insurance coverage were provided to covered employees during their employment. If an insured employee were to die, plaintiff would pay a death benefit to the employee's beneficiary. If an employee who met specific age and service requirements were to become totally and permanently disabled,[2] he or she would receive continued life insurance coverage without further premium payments. When disability occurs, the disabled insured becomes entitled to up to sixty monthly installment payments totalling the face value of their policy.[3] If an employee

---

1. Case nos. 424–89 T and 621–84 T were consolidated by court order dated July 13, 1990. The claims and issues identified by the complaint in No. 621–84 T are the subject of pending cross-motions for summary judgement.

2. The total and permanent disability provision of the Carborundum Contract, no. 5049, is assumed to be representative of the provisions that the reserve was intended to fund. (See section II of this opinion.) Under the provisions of the Carborundum contract, an employee was "totally and permanently disabled" if, as a result of bodily injury or disease from which he or she was not expected to recover, he or she was prevented from engaging in any business or occupation and from performing any work for compensation or profit for the remainder of his or her life.

3. Section 1(b) of the Carborundum policy provided:

TOTAL AND PERMANENT DISABILITY BENEFIT—Upon receipt by the Company of due notice and proof—both in writing—that any Employee while insured hereunder and prior to his sixtieth birthday has become totally and permanently disabled ... the Company shall:
1. discontinue all the insurance hereunder on the Employee, and
2. three months after receipt of such proof of such disability commence to pay to the Employee, in lieu of the payment of the Life Insurance at his death, monthly instalments determined as to number and amount of such Life Insurance in force at the date of commencement of such disability....

dies during a period of total and permanent disability, the insured's designated beneficiary would receive a lump sum payment equal to the face value amount of the insured's policy minus any installment payments paid out during the lifetime of the insured.

Under New York insurance law, plaintiff was required to maintain reserves sufficient to cover its liability under all of its policies.[4] Accordingly, after an insured became totally and permanently disabled within the terms of its contract, plaintiff, using recognized morbidity tables with assumed rates of interest, would compute a reserve representing the discounted present value of expected death benefits to be paid either upon death or as accelerated death benefits.[5] No portion of this reserve was set up to make disability payments.

For federal income tax purposes, Metropolitan treated this reserve as a "life insurance reserve" under I.R.C. § 801(b)(1)(B). As a result, plaintiff's taxable investment income was decreased by interest credited to the reserve pursuant to the formula provided in Code sections 804 and 805 for computing taxable investment income.

Upon audit, the Internal Revenue Service determined that plaintiff's reserve did not qualify as a "life insurance reserve" under I.R.C. § 801(b)(1)(B). This determination was based upon the Service's assumption that the continuing life insurance feature of plaintiff's life insurance contracts was a cancelable health and accident benefit. As a result, the IRS denied plaintiff the favorable tax treatment it believed that it was entitled to.

After the parties unsuccessful attempt to resolve their dispute at the administrative level, plaintiff filed an action in the United States Claims Court.[6] Both parties have filed motions for summary judgment on the reserve issue.

## DISCUSSION

### I. LIFE INSURANCE RESERVES

The central issue raised by the parties' cross-motions concerns the proper interpretation of former I.R.C. § 801(b) which defines life insurance reserves as amounts

(A) which are computed or estimated on the basis of recognized mortality or morbidity tables and assumed rates of interest, and

(B) which are set aside to mature or liquidate, either by payment or reinsurance, future accrued claims arising from life insurance, annuity, and non-cancelable health and accident insurance contracts (including life insurance or annuity contracts combined with noncancellable health and accident insurance) involving, at the time with respect to which the reserve is computed, life, health, or accident contingencies.

The government does not contest that the reserve at issue was computed on the basis of recognized morbidity or mortality tables and assumed rates of interest. The government also does not contest that, in accordance with I.R.C. § 801(b)(2), the reserve was required by state law. Defendant contends, however, that plaintiff's reserve is not a "life insurance reserve" within the meaning of section 801 because it was set aside for claims arising from contract provisions for cancelable health and accident insurance, or, at the least, from life insurance combined with cancelable health and accident insurance.

Defendant's principal arguments in support of its contention are that (1) the Carborundum contract states that all insurance under the contract is "discontinued" upon the onset of total and permanent disability; (2) the text of the disability provision in question does not characterize payments under the

4. New York Insurance Law § 73 (recodified as § 1304).

5. Plaintiff held four reserves under its group life insurance contracts: (1) a Total and Permanent Disability Reserve; (2) an Unearned Premium Reserve; (3) an Extended Death Benefit Reserve; and (4) a 31–Day Reserve. The only reserve at

issue in this action is the Total and Permanent Disability Reserve.

6. The Federal Courts Administration Act of 1992, Pub.L. No. 102–572, 106 Stat. 4506 (1992), enacted on October 29, 1992, changed the name of the United States Claims Court to the United States Court of Federal Claims.

total and permanent disability provisions as death benefits or life insurance benefits; (3) cancelable health and accident insurance, even if combined with life insurance in a single document, is disqualified from favorable tax treatment under section 801; and (4) the court in *Aetna Life Ins. Co. v. United States*, 16 Cl.Ct. 364 (1989), *aff'd*, 935 F.2d 280 (Fed.Cir.1991), in determining whether a benefit was for health or accident insurance, "focused upon the contingency that triggers the obligation to make a monetary payment;" the contingency "triggering" payments under the clause at issue is the onset of a medical condition, not death.

In *Aetna Life Ins. Co. v. United States*, 16 Cl.Ct. 364 (1989), *aff'd*, 935 F.2d 280 (Fed. Cir.1991), this court considered and rejected arguments similar to those now asserted by defendant. At issue in *Aetna* was whether reserves maintained by plaintiff for "waiver of premium benefits" provided to the insured upon disability, fell within the meaning of "life insurance reserves" under former I.R.C. § 801(b)(1)(B). Defendant argued that, since the event requiring payment of the benefit was the loss of health or an accident causing disability, the reserves maintained for the benefits were health and accident reserves outside the scope of section 801. Plaintiff conversely contended that, since the contingency triggering actual payment was death, the reserves fell within the definition of "life insurance reserves" and qualified for favorable tax treatment under section 801.

The *Aetna* court concluded that, as the "waiver of premium benefit" provision involved two contingencies—the onset of a disability, triggering the insured's liability under the provision, and death, triggering a monetary obligation to pay the policyholder's beneficiary—the policies containing this provision were a combination of life insurance and accident insurance. *Aetna* at 378. The court then characterized the reserves estab-

lished for these provisions according to the underlying contingency triggering the payment of benefits. The "Disability Reserve on Active Lives," established at the inception of the insurance policy to fund payment of waived insurance premiums after the time of disability, was held an accident and health insurance reserve. The "Disability Reserve on Disabled Lives," established after the onset of disability for payment of life insurance upon death, was held a life insurance reserve. *Id.*

■ The reserve at issue in this case is a combination of both reserves at issue in *Aetna*. Like the "Disability Reserve on Disabled Lives," this reserve was established only after the onset of a disability. But like the "Disability Reserve on Active Lives," it was established, in part, to fund payments made after the onset of disability and prior to death. According to defendant, payments made prior to the death of the insured constitute health or accident benefits arising from cancelable health and accident insurance. According to plaintiff, they comprise merely "accelerated death payments" pursuant to life insurance policies.

This court has previously considered whether reserves established for monthly payments of life insurance benefits upon disability constitute "life insurance reserves" under § 801 of the I.R.C. In *Principal Mutual Life Ins. Co. v. United States*, 26 Cl.Ct. 616 (1992), plaintiff had three disabled life reserves to provide for the payment of death benefits to disabled employees.[7] One reserve, similar to that at issue here, funded the payment, in sixty equal monthly installments, of the face value amount of whatever amount of life insurance the employee had in force at the time of disability. Payments were discontinued after the sixtieth monthly installment, death of the insured, or recovery from the disability, whichever occurred first.[8] Defendant, relying on *Aetna*, argued that

---

**7.** Like the reserve at issue in this case, the disability reserves at issue in *Principal Mutual* were established when an employee became totally and permanently disabled under the terms of the policy.

**8.** If the insured died while receiving payment of the monthly installments before the sixtieth in-

stallment had been paid, plaintiff-insurer paid the value of the unpaid installments to the insured's designated beneficiary. If the insured recovered from the disability, plaintiff reduced the face value amount of the policy by the aggregate amount of the installments already paid out.

because the event triggering the payment of benefits was the onset of disability, the reserve was a health and accident, rather than a life insurance, reserve.

This court, though recognizing that "on its face", defendant's position had merit, rejected the government's narrow interpretation of *Aetna*, stating:

> ... the government fails to appreciate that the overriding contingency insured against under this policy is the occurrence of death. If an employee never becomes disabled, the policy pays life insurance benefits upon the death of the employee. If the employee becomes disabled, the policy pays the face value amount of the employee's life insurance in monthly installments until the contingency of death, at which point the remaining amount of life insurance benefits in force is paid out to the employee's beneficiaries....

*Principal Mutual* at 628.

The court noted that, were an insured to remain disabled for more than sixty consecutive months, the entire face value amount of his or her policy would be exhausted and his or her beneficiary would never receive any death benefits. The court acknowledged that, in this situation, the policy would not operate as a life insurance policy, and that it would therefore be impossible to predict, at the time the reserve was established, whether it would ultimately operate as a life insurance reserve or part accident and health and part life insurance reserve. The court concluded, however, that the reserve was a life insurance reserve within the meaning of § 801(b) because:

> ... the amount of the monthly benefit installment made to a disabled employee is directly tied to the amount of life insurance the employee has in force at the time of disability.... While the amount of the life insurance benefits of the employee's beneficiaries are eligible for decreases as the monthly payments are disbursed, the employee's life insurance policy nonetheless remains in force until the life insurance benefits are fully exhausted. The

monthly benefits payments and the life insurance benefits are thus inexorably linked to the contingency of death....

*Id.*

■ It is clear that, under *Principal Mutual*, the disbursement of cash prior to death is irrelevant as to whether or not a reserve is a "life insurance reserve" under § 801. Instead, the focus must be upon: (1) whether the policy ensures a continuing obligation to pay a death benefit upon death of the insured, and (2) whether or not the total life insurance benefits payable to a beneficiary upon death of the insured decreases in proportion to the amounts paid out during the lifetime of the insured.

This two-step test is met in this case. The contracts giving rise to the reserve at issue provide that, if an insured becomes totally and permanently disabled, he or she will receive monthly installments equal to the face value amount of his or her life insurance until death. If the insured dies before the entire amount has been disbursed, his or her beneficiary will receive a death benefit equal to the face amount of insurance remaining on the policy.

■ Defendant urges the court that the "structure" and "text" of the Carborundum contract indicate that the insurance provided thereunder was cancelable health and accident, rather than life, insurance. Specifically, defendant points out that (1) the contract provides for the discontinuation of "all insurance hereunder" upon the onset of disability, and (2) the accelerated benefits are provided for in a section entitled "Total and Permanent Disability Benefit." The requirement that all insurance be discontinued, however, is merely a means of assuring that the insured does not simultaneously collect double the face value of the policy.[9] Similarly, the name of the section providing for accelerated payments can not alter the fundamental purpose of the contract—to provide financial protection in the event of death. To accept defendant's argument would be to put form over substance as well as to reject a long line

---

9. Section 1(a) of the Carborundum contract, entitled "Death Benefits", provides that, upon receipt of due notice and proof of the death of an insured, plaintiff shall pay to the beneficiary of record the amount of insurance in force on account of such employee at the time of his death.

of cases. *See Commissioner v. Court Holding Co.*, 324 U.S. 331, 334, 65 S.Ct. 707, 708, 89 L.Ed. 981 (1945); *Helvering v. F & R Lazarus and Co.*, 308 U.S. 252, 255, 60 S.Ct. 209, 210, 84 L.Ed. 226 (1939); *Weiss v. Stearn*, 265 U.S. 242, 254, 44 S.Ct. 490, 491, 68 L.Ed. 1001 (1924).

It would be strange indeed, in times of serious and costly, and often terminal disabilities, like cancer, AIDS, or strokes, to treat the very sensible and humane option to accelerate a death benefit, as changing the character of the whole policy. The financial burdens imposed upon a family with a terminal disability are often the same as those following the death of a disabled person. To treat the policy's option to deal with them similarly as changing its character makes little sense.

Because the *Principal Mutual* standard has been met in this case, the court must conclude that the reserve at issue is a "life insurance reserve" within the meaning of § 801(b) of I.R.C. of 1954.

## II. CARBORUNDUM CONTRACT

While defendant concedes, for purposes of its own motion for summary judgement, that the disability provision of the Carborundum contract is representative of those in the other contracts underlying the reserve, defendant does not make that concession with respect to its opposition to plaintiff's summary judgement motion. Defendant contends that, because certain variations existed amongst the contracts giving rise to the reserve, the Carborundum contract can not be representative of all others. Additionally, defendant states that because plaintiff destroyed 460 of the 620 contracts at issue,[10] there exists a genuine issue as to the content of these contracts. Therefore, defendant argues, granting summary judgment in favor of plaintiff would be inappropriate.

The court disagrees with defendant's reasoning. The minor variations amongst the contracts are irrelevant to whether the Carborundum contract is representative of the others. Plaintiff has submitted evidence, in the form of sworn affidavits, answers to interrogatories and deposition testimony, demonstrating that the Carborundum contract, like all other contracts at issue, provided for: (1) life insurance coverage for totally and permanently disabled employees without the payment of additional premiums, (2) an acceleration of the life insurance benefits, and (3) the payment of any remaining life insurance benefit upon death. The only reserve at issue in this case is the one created to cover liability under these provisions. As the benefits and provisions that existed in contracts other than the Carborundum had no effect upon this reserve, they are therefore irrelevant to this case.[11]

The court finds, therefore, that the Carborundum contract is representative of the other contracts underlying the reserve at issue. Accordingly, the court also finds that plaintiff's destruction of 460 of the 620 contracts at issue does not create a genuine issue of material fact as to the content of these contracts.

### CONCLUSION

Based upon the foregoing, the court grants plaintiff's motion for summary judgement with respect to the issues raised in paragraph 7(b) of the complaint in Cl.Ct. No. 424–89 T. The parties are directed to file with the court a joint status report within 60 days suggesting further proceedings in light of this opinion.

**IT IS SO ORDERED.**

---

10. It was Metropolitan's normal policy to destroy a contract ten years after it had been canceled or terminated. Govt.Exh. 33 at G11.

11. For example, the Lancaster Newspapers Contract differed from the Carborundum contract in that it provided for: (1) continued life insurance coverage with accelerated benefits for 50% of the coverage amount, and (2) a simple waiver of premium (without an acceleration feature) for the remainder of the coverage. This variation, however, is irrelevant. The reserve at issue in this case covers only continued life insurance coverage with an acceleration feature; the other coverage provided for in the Lancaster contract had no bearing upon the calculation of the reserve.